BRETT A. SHUMATE
Assistant Attorney General
ERIC J. HAMILTON
Deputy Assistant Attorney General
ERIC BECKENHAUER
Assistant Director
JAMES W. HARLOW (Md. Bar, no number issued)
Senior Trial Counsel
ISAAC C. BELFER (D.C. Bar No. 1014909)
Trial Attorney
Federal Programs Branch
U.S. Department of Justice
1100 L Street, N.W.
Washington, D.C. 20005
(202) 305-7134
Isaac.C.Belfer@usdoj.gov

*Counsel for Defendants (see signature page for complete list)*

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**
**SAN FRANCISCO DIVISION**

| | |
|---|---|
| STATE OF ARIZONA, *et al.*, | Case No. 3:26-cv-01609-VC |
| Plaintiffs, | DEFENDANTS' NOTICE OF MOTION TO DISMISS FOR LACK OF SUBJECT-MATTER JURISDICTION; MOTION TO DISMISS; AND MEMORANDUM OF POINTS AND AUTHORITIES |
| v. | |
| ROBERT F. KENNEDY, JR., *et al.*, | |
| Defendants. | Hearing Date: August 13, 2026 |
| | Time: 10:00 AM |
| | Judge:  Hon. Vince Chhabria |
| | Place: San Francisco Courthouse |
| | Courtroom 3, 17th Floor |

Case No. 3:26-cv-01609-VC                                      Defs.' Mot. to Dismiss

## NOTICE OF MOTION

PLEASE TAKE NOTICE that on August 13, 2026, at 10:00 a.m., in the United States Courthouse at 450 Golden Gate Avenue, 17th Floor, Courtroom 3, San Francisco, CA 94102, before the Honorable Vince Chhabria, Defendants will move to dismiss the Complaint.

## MOTION TO DISMISS

Defendants hereby move to dismiss the Complaint under Federal Rule of Civil Procedure 12(b)(1) for lack of subject-matter jurisdiction. The reasons for this motion are set forth in the following memorandum.

## TABLE OF CONTENTS

INTRODUCTION ................................................................................................................ 1

STATEMENT OF THE ISSUE............................................................................................... 1

BACKGROUND................................................................................................................. 2

    I.      CDC's Vaccine Recommendations.................................................................... 2

    II.     The Advisory Committee on Immunization Practices........................................ 3

    III.    The December 2025 Hepatitis B Vaccine Recommendations............................ 3

    IV.   The January 2026 Vaccine Recommendations ................................................... 4

    V.     Procedural History ............................................................................................. 6

LEGAL STANDARD .......................................................................................................... 6

ARGUMENT ..................................................................................................................... 7

    I.      Plaintiffs Lack Standing to Challenge the ACIP Appointments........................ 7

    II.     Plaintiffs Cannot Show Standing Based on Their Legal Codes ......................... 9

    III.    Plaintiffs Cannot Show Standing on the Theory that Increased Rates of Vaccine-Preventable Diseases Will Burden Plaintiffs' Resources ................................. 10

    IV.   Plaintiffs Cannot Show Standing Based on Providing Vaccine Information ................... 14

CONCLUSION................................................................................................................. 15

## TABLE OF AUTHORITIES

**Cases**

*Avoy v. Turtle Mountain, LLC*,
No. 13–CV–0236–LHK, 2014 WL 587173 (N.D. Cal. Feb. 14, 2014)...................................... 2

*Brownback v. King*,
592 U.S. 209 (2021)....................................................................................................... 7

*California v. Texas*,
593 U.S. 659 (2021)..................................................................................................... 12

*Clapper v. Amnesty Int'l USA*,
568 U.S. 398 (2013)......................................................................................... 12, 14, 15

*DaimlerChrysler Corp. v. Cuno*,
547 U.S. 332 (2006)....................................................................................................... 7

*FDA v. All. for Hippocratic Med.*,
602 U.S. 367 (2024).............................................................................................. *passim*

*Grimsby v. Pan*,
No. 5:25-CV-01575-AB-JC, 2025 WL 2829502 (C.D. Cal. Aug. 29, 2025)............................ 2

*Haaland v. Brackeen*,
599 U.S. 255 (2023)....................................................................................................... 7

*Lujan v. Defs. of Wildlife*,
504 U.S. 555 (1992)..................................................................................................... 12

*Metcalf v. Nat'l Petroleum Council*,
553 F.2d 176 (D.C. Cir. 1977)....................................................................................... 9

*Mulqueeny v. Nat'l Comm'n on the Observance of Int'l Women's Year, 1975*
549 F.2d 1115 (7th Cir. 1977) ....................................................................................... 9

*Murthy v. Missouri*,
603 U.S. 43 (2024)....................................................................................................... 12

*Norton v. S. Utah Wilderness All.*,
542 U.S. 55 (2004)......................................................................................................... 1

*Pennsylvania v. New Jersey*,
426 U.S. 660 (1976)......................................................................................... 9, 10, 14

*Physician's Ed. Network, Inc. v. Dep't of Health, Ed. & Welfare*,
653 F.2d 621 (D.C. Cir. 1981)....................................................................................... 9

*Spokeo, Inc. v. Robins*,
  578 U.S. 330 (2016)................................................................................................. 7

*Steel Co. v. Citizens for a Better Env't*,
  523 U.S. 83 (1998)............................................................................................... 6, 7

*TransUnion LLC v. Ramirez*,
  594 U.S. 413 (2021)................................................................................................ 8

*United States v. Texas*,
  599 U.S. 670 (2023).......................................................................................... 10, 11

*Washington v. FDA*,
  108 F.4th 1163 (9th Cir. 2024) ......................................................................... 11, 12

*Winsor v. Sequoia Benefits & Ins. Servs., LLC*,
  62 F.4th 517 (9th Cir. 2023) .................................................................................. 7

*Zucht v. King*,
  260 U.S. 174 (1922)................................................................................................ 2

**Statutes**

42 U.S.C. § 217a(a)................................................................................................... 3

42 U.S.C. § 262(a) .................................................................................................... 2

42 U.S.C. § 300gg-13 ............................................................................................... 2

Cal. Health & Safety Code § 120325........................................................................ 2

**Regulations**

26 C.F.R. § 54.9815-2713(a)(1)(ii)....................................................................... 2, 3

29 C.F.R. § 2590.715-2713(a)(1)(ii)......................................................................... 3

41 C.F.R. § 102-3.5................................................................................................... 8

45 C.F.R. § 147.130(a)(1)(ii) .................................................................................... 3

**Other Authorities**

ACIP Charter,
  https://perma.cc/8GC7-7UAC ................................................................................ 3

ACIP, June 25–26, 2025 Meeting Summary,
  https://perma.cc/WEP5-K2LD................................................................................ 15

iii

Centers for Medicare & Medicaid Services, *Affordable Care Act Implementation FAQs - Set 12*, Question 8,
    https://perma.cc/NL2N-3W9D ........................................................................................... 3

CDC, *ACIP Membership Roster*,
    https://perma.cc/S4C8-JMHK........................................................................................... 3

CDC, *ACIP Shared Clinical Decision-Making Recommendations*,
    https://perma.cc/QE5B-D8WU ............................................................................... 2, 5, 13

CDC, *ACIP Recommends Individual-Based Decision-Making for Hepatitis B Vaccine for Infants Born to Women Who Test Negative for the Virus*,
    https://perma.cc/QQ8P-DVNQ........................................................................................ 3, 4

CDC, *CDC Adopts Individual-Based Decision-Making for Hepatitis B Immunization for Infants Born to Women Who Test Negative for Hepatitis B Virus*,
    https://perma.cc/6R3R-E2HJ ............................................................................................. 4

CDC, *CDC Immunization Schedule Adopts Individual-Based Decision-Making for COVID-19 and Standalone Vaccination for Chickenpox in Toddlers* (Oct. 6, 2025),
    https://perma.cc/SD3P-G2V7 ........................................................................................... 3

CDC, *Recommended Child and Adolescent Immunization Schedule for Ages 18 Years or Younger*,
    https://perma.cc/Y3BM-BLD5 ......................................................................................... 2

CDC, *Vaccines Provided by the VFC Program*,
    https://perma.cc/ES7Y-HXXD ....................................................................................... 15

Decision Memo from Jay Bhattacharya, Mehmet Oz, and Marty Makary to Jim O'Neill (Jan. 5, 2026),
https://www.hhs.gov/sites/default/files/decision-memo-adopting-revised-childhood-adolescent-
    immunization-schedule.pdf.......................................................................................... 5, 6, 13

HHS, *Fact Sheet: CDC Childhood Immunization Recommendations*,
    https://perma.cc/DSL3-HWAJ.................................................................................... 6, 15

Press Release, *HHS Takes Bold Step to Restore Public Trust in Vaccines by Reconstituting ACIP*,
https://perma.cc/C5YC-Q7ZA ............................................................................................ 3

Presidential Mem., *Aligning United States Core Childhood Vaccine Recommendations with Best Practices from Peer, Developed Countries*,
    https://perma.cc/P67Y-8UQL ........................................................................................... 4

Tracy Beth Høeg & Martin Kulldorff, *Assessment of the U.S. Childhood and Adolescent Immunization Schedule Compared to Other Countries*,

https://www.hhs.gov/sites/default/files/assessment-of-the-us-childhood-and-adolescent-immunization-schedule-compared-to-other-countries.pdf. ............................................ 4, 5, 13

## INTRODUCTION

Plaintiffs are a group of States that disagree with federal vaccine recommendations and the Secretary of Health and Human Services' appointments to the Advisory Committee on Immunization Practices ("ACIP"). But Article III jurisdiction cannot be invoked simply to vindicate a plaintiff's preferred policy or personnel decision. A plaintiff must have standing, and here the States, whose alleged injuries are self-inflicted or fatally speculative and indirect, do not.

Each of Plaintiffs' standing theories is deficient. *First*, Plaintiffs lack standing to challenge the ACIP appointments, which do not directly harm them and are separated from any injury to Plaintiffs by multiple independent third-party decisions, including the ACIP's votes on vaccine recommendations and the Centers for Disease Control and Prevention ("CDC") Director's decisions whether to adopt the ACIP's recommendations. *Second*, any costs to Plaintiffs from changing their public health laws that incorporate the ACIP's and CDC's vaccine recommendations are self-inflicted. Defendants did not require Plaintiffs to incorporate those recommendations into their laws, nor have they required or pressured Plaintiffs to change their laws. *Third*, States do not have standing based on the indirect effects of federal action on State spending, such as increased Medicaid costs. And Plaintiffs' mere speculation about whether patients will choose to get vaccinated, whether they will develop vaccine-preventable diseases, and whether Plaintiffs will be responsible for their treatment costs does not suffice. *Finally*, any costs of providing vaccine information to the public are self-inflicted and do not support standing.

## STATEMENT OF THE ISSUE

Whether the Court lacks subject-matter jurisdiction because Plaintiffs lack standing.[1]

---

[1] There are other grounds for dismissal, including that Count III does not challenge a justiciable final agency action. *See Norton v. S. Utah Wilderness All.*, 542 U.S. 55, 61–65 (2004). But per the Court's order at the May 29, 2026, status conference, this motion addresses only standing.

1

**BACKGROUND**

## I.  CDC's Vaccine Recommendations

Before being marketed, vaccines must be approved by the Food and Drug Administration ("FDA"). 42 U.S.C. § 262(a). But the rules for prescribing and administering a particular vaccine are generally made at the state and local level through the exercise of police powers. *See Zucht v. King*, 260 U.S. 174, 176 (1922); *e.g.*, *Grimsby v. Pan*, No. 5:25-CV-01575-AB-JC, 2025 WL 2829502, at *4 (C.D. Cal. Aug. 29, 2025); Cal. Health & Safety Code § 120325.

CDC has published non-binding schedules of vaccines recommended for children and adults. *See, e.g.*, CDC, *Recommended Child and Adolescent Immunization Schedule for Ages 18 Years or Younger*, https://perma.cc/Y3BM-BLD5 (revised July 2, 2025).[2] The schedules generally contain three types of vaccine recommendations: recommendations (1) for everyone in an age group, (2) for certain high-risk groups or populations, and (3) based on shared clinical decision-making. *Id.* at 2. CDC also sometimes makes no recommendation. *See id.*

"Shared clinical decision-making" means the vaccination decision is "individually based and informed by a decision process between the health care provider and the patient or parent/guardian." CDC, *ACIP Shared Clinical Decision-Making Recommendations*, https://perma.cc/QE5B-D8WU (Jan. 7, 2025). A health care provider is "anyone who provides or administers vaccines," including nurses and pharmacists. *Id.* at FAQ. Vaccines administered through shared clinical decision-making, when that is recommended by CDC, generally must be covered by insurers without cost-sharing. *Id.* (citing 42 U.S.C. § 300gg-13; 26 C.F.R. § 54.9815-

---

[2] In resolving a motion to dismiss, "a court may take judicial notice of documents referenced in the complaint, as well as matters in the public record," including "materials available on government websites." *Avoy v. Turtle Mountain, LLC*, No. 13–CV–0236–LHK, 2014 WL 587173, at *2 n.2 (N.D. Cal. Feb. 14, 2014).

2713(a)(1)(ii); 29 C.F.R. § 2590.715-2713(a)(1)(ii); 45 C.F.R. § 147.130(a)(1)(ii)).[3]

## II.   The Advisory Committee on Immunization Practices

The Secretary may "appoint such advisory councils or committees . . . as he deems desirable . . . for the purpose of advising him." 42 U.S.C. § 217a(a). Exercising that discretion, the Secretary established the ACIP to advise the CDC Director "regarding the use of vaccines . . . for the prevention and control of vaccine-preventable diseases." ACIP Charter, at 2, https://perma.cc/8GC7-7UAC (filed May 27, 2026). The CDC Director reviews the ACIP's recommendations and decides whether to adopt them as official recommendations. *Id.* at 1.

In June 2025, Secretary Kennedy removed the then-serving ACIP members. U.S. Dep't of Health and Human Servs. ("HHS"), Press Release, *HHS Takes Bold Step to Restore Public Trust in Vaccines by Reconstituting ACIP*, https://perma.cc/C5YC-Q7ZA (June 9, 2025). He has since appointed 16 new ACIP members.[4] *See* CDC, *ACIP Membership Roster*, https://perma.cc/S4C8-JMHK (Mar. 2, 2026). Up to four seats on the ACIP remain vacant.

## III. The December 2025 Hepatitis B Vaccine Recommendations

In December 2025, the ACIP voted to recommend shared clinical decision-making "for parents deciding whether to give the hepatitis B vaccine, including the birth dose, to infants born to women who test negative for the virus." CDC, *ACIP Recommends Individual-Based Decision-Making for Hepatitis B Vaccine for Infants Born to Women Who Test Negative for the Virus*, https://perma.cc/QQ8P-DVNQ (Dec. 5, 2025). The ACIP recommended that "parents and health care providers should consider whether there are infection risks" and provided examples of such

---

[3] *See* CDC, *CDC Immunization Schedule Adopts Individual-Based Decision-Making for COVID-19 and Standalone Vaccination for Chickenpox in Toddlers* (Oct. 6, 2025), https://perma.cc/SD3P-G2V7; Centers for Medicare & Medicaid Services, *Affordable Care Act Implementation FAQs - Set 12*, Question 8 (last modified Sept. 10, 2024), https://perma.cc/NL2N-3W9D.

[4] One of those appointees, Dr. Kulldorff, is no longer a member of the ACIP.

risks. *Id.* The ACIP further suggested that "[f]or those infants not receiving the birth dose, . . . the initial dose be administered no earlier than two months of age." *Id.* CDC adopted these recommendations, explaining they "reflect[] ACIP's rigorous review of the available evidence" and "restor[e] the balance of informed consent to parents whose newborns face little risk of contracting hepatitis B." CDC, *CDC Adopts Individual-Based Decision-Making for Hepatitis B Immunization for Infants Born to Women Who Test Negative for Hepatitis B Virus*, https://perma.cc/6R3R-E2HJ (Dec. 16, 2025).

### IV. The January 2026 Vaccine Recommendations

***The Presidential Memorandum.*** On December 5, 2025, the President "direct[ed] the Secretary of Health and Human Services and the Director of [CDC] to review best practices from peer, developed countries for core childhood vaccination recommendations—vaccines recommended for all children—and the scientific evidence that informs those best practices." Presidential Mem., *Aligning United States Core Childhood Vaccine Recommendations with Best Practices from Peer, Developed Countries*, https://perma.cc/P67Y-8UQL (Dec. 5, 2025). The President further ordered that "if they determine that those best practices are superior to current domestic recommendations," they shall "update the United States core childhood vaccine schedule to align with such scientific evidence and best practices from peer, developed countries while preserving access to vaccines currently available to Americans." *Id.*

***The Scientific Assessment.*** On January 2, 2026, two senior HHS officials prepared "a scientific, evidence-based, data-driven response to the President's directive." Tracy Beth Høeg & Martin Kulldorff, *Assessment of the U.S. Childhood and Adolescent Immunization Schedule*

*Compared to Other Countries*, at 1 (Jan. 2, 2026) ("*Assessment*").[5] Based on a comparison of the U.S. childhood immunization schedule to those of 20 peer nations, as well as further scientific analysis, the authors proposed a revised schedule designed to "restore trust" in the schedule and facilitate "informed decision[s]" while "not restricting anyone's access" to vaccines. *Id.* at 14–17.

  ***CDC's Decision Memo.*** On January 5, 2026, the leaders of several HHS sub-agencies sent a memorandum to CDC's then–Acting Director recommending that CDC adopt the immunization schedule proposed in the scientific assessment.[6] *See* Decision Memo from Jay Bhattacharya, Mehmet Oz, and Marty Makary to Jim O'Neill (Jan. 5, 2026) ("*Decision Memo*").[7] Following CDC's existing recommendation structure, the proposed schedule included three recommendation categories. The first category—"Immunizations Recommended for All Children"—included 11 vaccines: Measles, Mumps, Rubella, Diphtheria, Tetanus, Pertussis, Polio, Hib, Pneumococcal Disease, HPV, and Varicella (Chickenpox). *Id.* at 4. No changes were proposed to the second category: "Immunizations Recommended for Certain High-Risk Groups or Populations." *Id.* at 5.

  For the third category—"Immunizations Based on Shared Clinical Decision-Making"— vaccines for six diseases were recommended: Hepatitis A, Hepatitis B, Rotavirus, Meningococcal Disease, Influenza, and COVID-19. *Id.* at 5–8.[8] "[A]ll these vaccines will continue to be available

---

[5]   https://www.hhs.gov/sites/default/files/assessment-of-the-us-childhood-and-adolescent-immunization-schedule-compared-to-other-countries.pdf.

[6] The decision memo did not "redefine[]" shared clinical decision-making. Compl., ECF No. 1, ¶¶ 243–45. Its description of shared clinical decision-making is consistent with how HHS previously described that decision-making process. *Compare Decision Memo* at 5, *with* CDC, *ACIP Shared Clinical Decision-Making Recommendations*.

[7] https://www.hhs.gov/sites/default/files/decision-memo-adopting-revised-childhood-adolescent-immunization-schedule.pdf.

[8] Contrary to Plaintiffs' allegation, Compl. ¶ 307, no changes were made for the RSV vaccine. As before, the RSV vaccine is in the second category: "Immunizations Recommended for Certain High-Risk Groups or Populations." *Assessment* at 18; *Decision Memo* at 8.

for anyone who wants them and will be covered by Medicaid, [the Children's Health Insurance Program], the Vaccines for Children ["VFC"] Program, and private health insurance." *Id.* at 5; *see id.* at 2–3.[9] Notably, no vaccines were proposed to be moved from a recommended category to the "Not Recommended" category. The memo further recommended that HHS "fund and conduct gold standard medical research to assess overall health outcomes related to all immunizations on the revised schedule." *Id.* at 8. CDC's Acting Director approved the proposed schedule. *Id.* at 8–9.

## V.  Procedural History

Plaintiffs, fourteen States and the Governor of Pennsylvania, filed suit on February 24, 2026. ECF No. 1. They assert Administrative Procedure Act ("APA") claims against (1) CDC's January 2026 vaccine recommendations, (2) Secretary Kennedy's ACIP appointments, and (3) the ACIP's Hepatitis B vaccine recommendations that CDC adopted in December 2025. *Id.*

The same actions are being challenged on the same grounds in *American Academy of Pediatrics v. Kennedy*, No. 1:25-cv-11916-BEM (D. Mass.). There, the district court entered preliminary relief in March 2026, and Defendants have appealed that relief as to the ACIP appointments, arguing, *inter alia*, that Plaintiffs lack standing and that the appointments are not final agency action. The Court of Appeals granted Defendants' motion to expedite the appeal, ordering briefing completed by July 2026, "[o]ral argument, to the extent deemed necessary, . . . as soon as practicable after the completion of briefing," and the matter "resolved without undue delay." Order of Court, *Am. Acad. of Pediatrics,* No. 26-1503 (1st Cir. June 16, 2026).

### LEGAL STANDARD

Subject-matter jurisdiction must "be established as a threshold matter," *Steel Co. v. Citizens*

---

[9] *See* HHS, *Fact Sheet: CDC Childhood Immunization Recommendations*, https://perma.cc/DSL3-HWAJ (last reviewed Jan. 5, 2026).

*for a Better Env't*, 523 U.S. 83, 94–95 (1998), and the Court is "presume[d]" to "lack jurisdiction" unless Plaintiffs meet their "burden of establishing it," *DaimlerChrysler Corp. v. Cuno*, 547 U.S. 332, 342 n.3 (2006) (quotations omitted). Plaintiffs' non-conclusory, non-speculative allegations must "plausibly allege all jurisdictional elements." *Brownback v. King*, 592 U.S. 209, 217 (2021). In particular, Plaintiffs must "clearly . . . allege facts demonstrating each element" of standing. *Winsor v. Sequoia Benefits & Ins. Servs., LLC*, 62 F.4th 517, 523 (9th Cir. 2023) (quoting *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016)) (cleaned up).

**ARGUMENT**

Article III standing doctrine "screens out plaintiffs who might have only a general legal, moral, ideological, or policy objection to a particular government action." *FDA v. All. for Hippocratic Med.*, 602 U.S. 367, 381 (2024). Plaintiffs must show they have "(1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Spokeo*, 578 U.S. at 338. States "do[] not have standing as *parens patriae* to bring an action against the Federal Government" on behalf of their residents, and thus only a direct injury to the States themselves could support standing. *Haaland v. Brackeen*, 599 U.S. 255, 294–95 (2023) (quotations omitted).

Here, Plaintiffs allege three theories of standing: (1) the challenged actions burden the "administration of Plaintiff States' legal codes," (2) Plaintiffs will expend "resources due to increased rates of vaccine-preventable diseases," and (3) Plaintiffs have responded to the challenged actions by providing public education about vaccines. Compl. ¶¶ 246–329. None of these theories supports standing. Before turning to those theories, we will explain why Plaintiffs' lack of standing is especially glaring for Count III, their challenge to the ACIP appointments.

## I.  Plaintiffs Lack Standing to Challenge the ACIP Appointments

The ACIP appointments (challenged in Count III, Compl. ¶¶ 360–82) cause no cognizable

7

injury to Plaintiffs. *See TransUnion LLC v. Ramirez*, 594 U.S. 413, 431 (2021) (because "standing is not dispensed in gross," a plaintiff "must demonstrate standing for each claim . . . and for each form of relief"). No statute or regulation entitles Plaintiffs to representation on the ACIP. Plaintiffs allege "ACIP's Membership Balance Plan provides that a 'state and local health department perspective' should be considered when selecting voting members." Compl. ¶ 372. But the membership balance plan is not a source of law, and the General Services Administration guidance that was the genesis for membership balance plans did not "create any right" enforceable "by any party against the United States." 41 C.F.R. § 102-3.5. Moreover, even if "state and local" perspectives had to be considered in the selection process, there is no requirement that any ACIP member represent those perspectives. *Contra* Compl. ¶ 373.

Plaintiffs' claimed injuries also are not fairly traceable to the ACIP appointments. The links in the causal chain between the ACIP appointments and any injury are too "speculative" and "attenuated," relying on multiple "unfettered choices . . . by independent actors." *All. for Hippocratic Med.*, 602 U.S. at 383 (quotations omitted). After the ACIP members were appointed, the ACIP independently voted on vaccine recommendations. The CDC Director then independently decided whether to adopt those recommendations[10] and, in January 2026, independently decided to issue a revised childhood vaccine schedule. As discussed below, moreover, multiple levels of speculation separate the CDC's vaccine schedule from any alleged harm to Plaintiffs. *See infra* pp. 10–14. Thus, Plaintiffs cannot show traceability. Similarly, they cannot show redressability because an order vacating the ACIP appointments would not affect

---

[10] In certain cases when the CDC Director position was vacant, the Secretary decided whether to adopt the ACIP's recommendations.

CDC's January 2026 recommendations.[11] Count III should be dismissed for lack of standing.

## II. Plaintiffs Cannot Show Standing Based on Their Legal Codes

Plaintiffs allege that because some state laws reference federal vaccine recommendations, and those recommendations have changed in ways Plaintiffs disagree with, these States face the "administrative burden and expense" of altering their laws. *Id.* ¶ 253; *see id.* ¶¶ 248–76. But any such harm is self-inflicted because States have always been free to set their own vaccine policies. Nothing required them to rely on federal recommendations in the past, and nothing requires them to end that reliance now.[12]

*Pennsylvania v. New Jersey*, 426 U.S. 660 (1976) (per curiam), is a case in point. There, Pennsylvania challenged a New Jersey tax because Pennsylvania extended a tax credit to its residents for taxes paid to New Jersey.[13] *Id.* at 664. But the Supreme Court rejected Pennsylvania's alleged injury as "self-inflicted, resulting from decisions by [its] state legislature[]." *Id.* "Nothing required [Pennsylvania] to extend a tax credit to [its] residents for income taxes paid to [New Jersey], and nothing prevents Pennsylvania from withdrawing that credit." *Id.* "No State can be

---

[11] *See Physician's Ed. Network, Inc. v. Dep't of Health, Ed. & Welfare*, 653 F.2d 621, 623 (D.C. Cir. 1981) (per curiam) (plaintiffs lacked standing to challenge advisory committee report because "there is no substantial likelihood that rescission of the report will redress the injury of [plaintiffs'] members"); *Mulqueeny v. Nat'l Comm'n on the Observance of Int'l Women's Year, 1975*, 549 F.2d 1115, 1121–22 (7th Cir. 1977) (plaintiffs lacked standing to challenge actions of advisory body because they could not "establish that the harm they assert is fairly attributable to the Commission's functioning, or that the grant of injunctive relief will remedy the alleged injury"); *see also Metcalf v. Nat'l Petroleum Council*, 553 F.2d 176, 186–87 (D.C. Cir. 1977).

[12] Plaintiffs allege they must "expend time and resources mitigating inconsistencies between their legal codes and the CDC's recommendations." Compl. ¶ 276. It is unclear which "inconsistencies" Plaintiffs reference. Moreover, Defendants have not required Plaintiffs to make their laws "consistent with" CDC's recommendations or to take any actions in response to any "inconsistencies." *Id.*

[13] The lawsuit also involved several other states, but for simplicity this discussion will refer only to Pennsylvania and New Jersey.

heard to complain about damage inflicted by its own hand." *Id.*

So too here. Just as Pennsylvania freely chose to extend a tax credit for income taxes paid to New Jersey, Plaintiffs freely chose to incorporate CDC's and the ACIP's vaccine recommendations into their public health laws. And just as Pennsylvania was free to withdraw the tax credit, Plaintiffs are free to maintain or revise their public health laws as they see fit.

Plaintiffs' suggestion that Defendants are "pressur[ing]" them to change state laws to stop relying on CDC/ACIP vaccine recommendations makes little sense. Compl. ¶ 254. Why would they? These are Defendants' own recommendations. Although Plaintiffs may want to change their laws to align with their preferred vaccine policy, *e.g.*, *id.* ¶¶ 259–61, Defendants have not required or pressured Plaintiffs to make any such changes.[14]

### III. Plaintiffs Cannot Show Standing on the Theory that Increased Rates of Vaccine-Preventable Diseases Will Burden Plaintiffs' Resources

Plaintiffs allege the CDC vaccine schedule will "lead to decreased vaccine uptake and increased rates of vaccine-preventable diseases" and, in turn, that their "health and Medicaid agencies" will face higher costs to treat these diseases and monitor for and respond to outbreaks. Compl. ¶¶ 277–78; *see id.* ¶¶ 277–97. But such alleged harms are too attenuated and speculative.

"[I]n our system of dual federal and state sovereignty, federal policies frequently generate indirect effects on state revenues or state spending." *United States v. Texas*, 599 U.S. 670, 680 n.3 (2023). "[W]hen a State asserts, for example, that a federal law has produced only those kinds of

---

[14] Plaintiffs also allege they have issued orders to ensure access to vaccines. *See, e.g.*, Compl. ¶ 300. It is unclear what this means or how it shows an injury traceable to the challenged actions, which do not restrict vaccine access. As discussed above, the vaccines at issue are still covered by insurance. *See supra* pp. 5–6. If Plaintiffs are referring to revising state rules that restrict pharmacists' ability to administer vaccines or provide shared clinical decision-making, *e.g.*, Compl. ¶ 255, any burden on Plaintiffs is self-inflicted. Defendants did not require Plaintiffs to impose those restrictions on pharmacists in the first place, and they are not now requiring Plaintiffs to change any such restrictions. *See Pennsylvania*, 426 U.S. at 664.

indirect effects, the State's claim for standing can become more attenuated." *Id.* Thus, *United States v. Texas* held the plaintiff States lacked standing to challenge a federal immigration policy that would cause them to "incur additional costs." *Id.* at 676. That sort of attenuated financial effect could not "overcome[] the fundamental Article III problem" with the lawsuit. *Id.* at 680 n.3.

The same was true in *Washington v. FDA*, 108 F.4th 1163 (9th Cir. 2024), a challenge to FDA's regulation of mifepristone. There, several States sought to intervene as plaintiffs, but the Ninth Circuit rejected their claim that increased healthcare costs gave them standing. The Circuit held that "an alleged uptick in Medicaid costs is exactly the kind of 'indirect effect[] on . . . state spending' that the Supreme Court has rejected" as insufficient. *Id.* at 1176 (quoting *Texas*, 599 U.S. at 680 n.3) (omission in original). "'[V]irtually all drugs,'" it explained, "'come with complications, risks, and side effects,' which means that changes in prescription drug guidelines will frequently 'yield more visits to doctors to treat complications or side effects.'" *Id.* (quoting *All. for Hippocratic Med.*, 602 U.S. at 392). "Allowing [the States] to proceed based on predictions of increased emergency-room visits alone would give not just states, but every entity that provides health insurance or subsidized medical care, standing 'to challenge any FDA decision approving a new drug.'" *Id.* (quoting *All. for Hippocratic Med.*, 602 U.S. at 392). The Circuit "decline[d] to endorse this boundless conception of Article III's injury requirement" and held that the States "cannot establish standing based on the alleged costs to the state's finances because the asserted causal chain is too attenuated." *Id.*

*Texas* and *Washington* are fatal to Plaintiffs' attempt to show standing through "'indirect effect[s] on . . . state spending.'" *Washington*, 108 F.4th at 1176 (quoting *Texas*, 599 U.S. at 680 n.3) (omission in original). As with drugs, there are potential risks both in receiving and in foregoing vaccines. *See id.* But Plaintiffs' theory that the new federal recommendations will lead

11

to a decrease in vaccine uptake, causing a measurable increase in disease burden, followed by a rise in healthcare usage, and ultimately an increase in healthcare costs borne by the States—and all of this despite the States' power to issue their own recommendations and, indeed, impose vaccination requirements—is simply too attenuated to support standing. *See id.*

The links in Plaintiffs' causal chain are also "too speculative." *All. for Hippocratic Med.*, 602 U.S. at 383 (citing *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 410–411 (2013)). Because Plaintiffs' theory rests on how independent third parties (i.e., their residents) will respond to the challenged actions (i.e., by allegedly foregoing vaccination), rather than on any direct effect of the actions on Plaintiffs, standing is "substantially more difficult to establish." *Id.* at 382 (quoting *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 562 (1992)).

The challenged actions do not require doctors to recommend for or against any vaccine or require patients to accept or decline vaccination; they "simply provide[] doctors and patients with increased flexibility . . . based on their assessment of risk in each individual case." *Washington*, 108 F.4th at 1175. "The links in [Plaintiffs' causal] chain depend on the independent actions of doctors and [patients] whose medical decisionmaking is informed by a wide range of individualized considerations that are difficult to predict." *Id.* Plaintiffs cannot show standing by "'speculat[ing] about the unfettered [vaccination] choices made by [these] independent actors not before the courts,'" where "it is not sufficiently predictable" how those actors will make those choices. *All. for Hippocratic Med.*, 602 U.S. at 383 (quoting *Clapper*, 568 U.S. at 415 n.5); *see Murthy v. Missouri*, 603 U.S. 43, 72 (2024); *California v. Texas*, 593 U.S. 659, 675 (2021).

Plaintiffs also speculate they will face increased costs for shared clinical decision-making. *E.g.*, Compl. ¶¶ 279–80, 282. Providers may or may not spend more time on vaccine counseling than they would otherwise. There "is not a prescribed set of considerations or decision points" in

12

the shared clinical decision-making process, and healthcare providers can use their independent judgment to determine the consultation that is appropriate for any given patient. CDC, *ACIP Shared Clinical Decision-Making Recommendations*, FAQ. Additionally, shared clinical decision-making can be provided by pharmacists,[15] *id.*, and there is no indication Plaintiffs would need to compensate pharmacists for counseling patients. Even as to doctors, Plaintiffs concede "doctors have generally not billed for counseling when administering vaccines," Compl. ¶ 279, and it is speculative whether they will bill for counseling in the future. Moreover, it is pure speculation that "providers *may* lobby" for increased payment for vaccine counseling. *Id.* ¶ 281 (emphasis added).

Plaintiffs also allege vaccine uptake will decrease because CDC's vaccine schedule "spread[s] and reinforc[es] inaccurate information about the safety and efficacy of the [affected] Vaccines." *Id.* ¶ 277. That is inaccurate.[16] The schedule's shared clinical decision-making recommendation for the vaccines at issue allows healthcare providers to consult with patients based on their independent judgment, considering the vaccines' safety and efficacy and any other relevant considerations. *See Assessment* at 2–3 (Fig. 1); *Decision Memo* at 8.

Finally, the other links in Plaintiffs' lengthy causal chain are equally speculative. As noted, patients may choose to get vaccinated after engaging in shared clinical decision-making with a healthcare provider. Even if they forego vaccination, they may not develop vaccine-preventable

---

[15] Thus, even if some people "lack usual access to primary care," that is not "a barrier to getting vaccinated." Compl. ¶ 241 (quotations omitted).

[16] Defendants are not "discouraging the administration of [the] hepatitis B vaccine," *id.* ¶ 297, but are recommending it based on shared clinical decision-making. Additionally, Plaintiffs allege harms from measles and pertussis, *id.* ¶¶ 286–88, 292, but the challenged actions did not change the recommendations for those vaccines. The January 2026 schedule maintained the recommendations that all children receive vaccines for eleven diseases, including measles and pertussis. *See supra* p. 5. If patients or parents decline vaccination for measles or pertussis, that is not fairly traceable to the challenged actions. *See, e.g.*, Compl. ¶¶ 286–88 (alleging measles cases among unvaccinated individuals in 2025, predating the January 2026 schedule), 292 (vaccination rates in Michigan were declining even before the challenged actions).

13

disease. Such disease certainly is not "*certainly impending*," as required for standing. *Clapper*, 568 U.S. at 409 (quotations omitted). And even if they develop vaccine-preventable disease, it is speculative whether they would receive treatment, what type of treatment they would receive, and whether it would be covered by Medicaid or otherwise compensated by Plaintiffs. The net effect on Plaintiffs' healthcare costs from the challenged actions is also speculative, considering any decreased costs for vaccine administration and treating vaccine-related injuries. In sum, "[t]he causal link between [the challenged] actions and [Plaintiffs'] alleged injuries is too speculative or otherwise too attenuated to establish standing." *All. for Hippocratic Med.*, 602 U.S. at 390.

## IV. Plaintiffs Cannot Show Standing Based on Providing Vaccine Information

Plaintiffs allege their health agencies are providing the public with vaccine information, such as "public health guidance and immunization recommendations." Compl. ¶ 309; *see id.* ¶¶ 270, 275, 298–329. But these costs are self-inflicted. *See Pennsylvania*, 426 U.S. at 664. Plaintiffs' activities are driven by their *disagreement* with Defendants' vaccine recommendations, and Defendants obviously are not requiring Plaintiffs to disagree with them.

The Supreme Court rejected similar standing arguments in *Alliance for Hippocratic Medicine*. There, the plaintiffs expended resources "to the detriment of other spending priorities" in response to FDA's actions relaxing the regulation of mifepristone. *All. for Hippocratic Med.*, 602 U.S. at 394. For example, they "conduct[ed] their own studies on mifepristone" to "better inform . . . the public about mifepristone's risks," "draft[ed] citizen petitions to FDA," and "engag[ed] in public advocacy and public education." *Id.* But "an organization that has not suffered a concrete injury caused by a defendant's action cannot spend its way into standing simply by expending money to gather information and advocate against the defendant's action." *Id.*

Likewise, the States "cannot manufacture [their] own standing" by providing "public education" about vaccines, such as issuing vaccine guidance and answering questions, or by

14

"stud[ying]" vaccines in support of those efforts. *Id.*; *see, e.g.*, Compl. ¶ 303. Indeed, the States provided guidance and other public education about vaccines before the challenged actions, *see, e.g.*, Compl. ¶¶ 299–301, 307, and there is no indication they ever claimed that was an injury. Moreover, Plaintiffs "cannot manufacture standing merely by inflicting harm on themselves based on their fears of hypothetical future harm that is not certainly impending," *Clapper*, 568 U.S. at 416, such as expending resources based on speculation that residents will forego vaccination, develop disease, and increase State healthcare costs.

Finally, Plaintiffs cannot show standing by expending resources in response to their speculative fear that the affected vaccines will someday no longer be covered by the Vaccines for Children ("VFC") Program. Compl. ¶¶ 315, 320–27. Under the VFC Program, the federal government purchases vaccine doses and distributes them to VFC-registered healthcare providers, who then administer the vaccines to eligible children free-of-charge. Which vaccines are available through the VFC Program is based on, among other things, the ACIP's resolutions to include a vaccine in the VFC Program, which are separate from the ACIP's vaccine recommendations to CDC and the CDC vaccine schedules. *See, e.g.*, ACIP, June 25–26, 2025 Meeting Summary, at 48–49, https://perma.cc/WEP5-K2LD (separate ACIP votes for RSV vaccine recommendation and RSV vaccine VFC resolution). Here, all the vaccines at issue are still covered by the VFC Program. *See* CDC, *Vaccines Provided by the VFC Program*, https://perma.cc/ES7Y-HXXD. Defendants have assured the public that the vaccines "will remain available for free through private insurance, Medicaid, and the VFC Program," and Plaintiffs concede they "are presently unaware of an impact on the coverage or availability of the vaccines through these programs." Compl. ¶¶ 320–21; *see* HHS, *Fact Sheet: CDC Childhood Immunization Recommendations*.

**CONCLUSION**

For these reasons, the Court should dismiss this case for lack of subject-matter jurisdiction.

15

June 25, 2026

Respectfully submitted,

BRETT A. SHUMATE
Assistant Attorney General

ERIC J. HAMILTON
Deputy Assistant Attorney General

ERIC B. BECKENHAUER
Assistant Director

JAMES W. HARLOW
Senior Trial Counsel

*/s/ Isaac C. Belfer*
ISAAC C. BELFER (D.C. Bar No. 1014909)
Trial Attorney
Federal Programs Branch
Civil Division
U.S. Department of Justice
1100 L Street, NW
Washington, DC 20005
(202) 305-7134
(202) 514-8742 (fax)
Isaac.C.Belfer@usdoj.gov

*Counsel for Defendants Robert F. Kennedy, Jr., in his official capacity as Secretary of HHS; HHS; Jayanta Bhattacharya, in his capacity as acting Director of CDC; and CDC*

16

**CERTIFICATE OF SERVICE**

I hereby certify that this document, filed through the CM/ECF system, will be sent via electronic mail to the registered participants as identified on the Notice of Electronic Filing.


June 25, 2026                          */s/ Isaac C. Belfer*
                                       Isaac C. Belfer