BRETT A. SHUMATE
Assistant Attorney General
ERIC J. HAMILTON
Deputy Assistant Attorney General
ERIC BECKENHAUER
Assistant Director
JAMES W. HARLOW (Md. Bar, no number issued)
Senior Trial Counsel
ISAAC C. BELFER (D.C. Bar No. 1014909)
Trial Attorney
Federal Programs Branch
U.S. Department of Justice
1100 L Street, N.W.
Washington, D.C. 20005
(202) 305-7134
Isaac.C.Belfer@usdoj.gov

*Counsel for Defendants (see signature page for complete list)*

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**
**SAN FRANCISCO DIVISION**

| | | |
|---|---|---|
| STATE OF ARIZONA, *et al.*, | ) | Case No. 3:26-cv-01609-VC |
| | ) | |
| Plaintiffs, | ) | DEFENDANTS' REPLY IN SUPPORT OF THEIR |
| | ) | MOTION TO DISMISS FOR LACK OF SUBJECT- |
| v. | ) | MATTER JURISDICTION |
| | ) | |
| ROBERT F. KENNEDY, JR., *et al.,* | ) | Hearing Date: August 13, 2026 |
| | ) | Time: 10:00 AM |
| Defendants. | ) | Judge:  Hon. Vince Chhabria |
| | ) | Place: San Francisco Courthouse |
| | ) | Courtroom 3, 17th Floor |
| | ) | |
| | ) | |

Case No. 3:26-cv-01609-VC                         Defs.' Reply ISO Mot. to Dismiss

**TABLE OF CONTENTS**

INTRODUCTION ................................................................................................................ 1

ARGUMENT .................................................................................................................... 2

I.    Plaintiffs Lack Standing to Challenge the ACIP Appointments ............................ 2

II.   Plaintiffs Cannot Show Standing Based on Their Legal Codes ............................. 4

III.  Plaintiffs Cannot Show Standing on the Theory that Increased Rates of
      Vaccine-Preventable Diseases Will Burden Plaintiffs' Resources ........................ 6

IV.   Plaintiffs Cannot Show Standing Based on Providing Vaccine Information ....... 10

CONCLUSION ................................................................................................................. 10

# TABLE OF AUTHORITIES

**Cases**

*Adams v. Skagit Bonded Collectors, LLC,*
836 F. App'x 544 (9th Cir. 2020) ........................................................................................ 2, 3

*Biden v. Nebraska,*
600 U.S. 477 (2023) ........................................................................................................ 6, 9

*California v. Azar,*
911 F.3d 558 (9th Cir. 2018) ............................................................................................... 4

*City & Cnty. of S.F. v. U.S. Citizenship & Immigr. Servs.,*
981 F.3d 742 (9th Cir. 2020) ............................................................................................... 9

*Clapper v. Amnesty Int'l USA,*
568 U.S. 398 (2013) .................................................................................................. 7, 8, 10

*DeNicolo v. Viking Client Servs., Inc.,*
No. 4:19-CV-00210-YGR, 2022 WL 22913839 (N.D. Cal. Apr. 1, 2022) ........................... 2, 3

*Dep't of Com. v. New York,*
588 U.S. 752 (2019) ........................................................................................................... 9

*FDA v. All. for Hippocratic Med.,*
602 U.S. 367 (2024) ................................................................................................... *passim*

*Massachusetts v. U.S. Dep't of Health & Hum. Servs.,*
923 F.3d 209 (1st Cir. 2019) ............................................................................................... 9

*New York v. Kennedy,*
155 F.4th 67 (1st Cir. 2025) .............................................................................................. 10

*Paulsen v. CNF Inc.,*
559 F.3d 1061 (9th Cir. 2009) ............................................................................................. 9

*Pennsylvania v. New Jersey,*
426 U.S. 660 (1976) ........................................................................................................ 4, 5

*Texas v. United States,*
787 F.3d 733 (5th Cir. 2015) ............................................................................................... 5

*TransUnion LLC v. Ramirez,*
594 U.S. 413 (2021) ........................................................................................................... 2

*United States v. Texas*,
   599 U.S. 670 (2023)..................................................................................................... 6

*Washington v. FDA*,
   108 F.4th 1163 (9th Cir. 2024) ...................................................................... 1, 6, 7

*Washington v. Trump*,
   145 F.4th 1013 (9th Cir. 2025) ...................................................................... 5, 6, 8

**Other Authorities**

CDC, *ACIP Shared Clinical Decision-Making Recommendations* (Jan. 7, 2025),
   https://perma.cc/QE5B-D8WU ...................................................................... 7, 8, 9

Decision Memo from Jay Bhattacharya, Mehmet Oz, and Marty Makary to Jim O'Neill (Jan. 5,
   2026), https://www.hhs.gov/sites/default/files/decision-memo-adopting-revised-childhood-
   adolescent-immunization-schedule.pdf .............................................................................. 8

Realigning United States Core Childhood Vaccine Recommendations with Best Practices from
   Peer, Developed Countries, Exec. Order No. 14,407, 91 Fed. Reg. 33575 (May 29, 2026)...... 3

## INTRODUCTION

Plaintiffs brought this case because they disagree with federal vaccine policy. But they lack standing because they have not been harmed by the challenged actions. The purpose of Article III standing doctrine is to "screen[] out" precisely these types of plaintiffs, who "have only a general legal, moral, ideological, or policy objection to a particular government action." *FDA v. All. for Hippocratic Med.*, 602 U.S. 367, 381 (2024).

Plaintiffs challenge Secretary Kennedy's appointments to the Advisory Committee on Immunization Practices ("ACIP"), but their abstract objections to the ACIP members' qualifications are not a concrete injury. Nor is the alleged confusion that the appointments purportedly caused. And the causal chain from the ACIP appointments, to the ACIP's independent vaccine recommendations, to the CDC Director's independent decision whether to adopt the ACIP's recommendations, to any harm to Plaintiffs from those recommendations, is too attenuated and speculative to support standing. Plaintiffs also cannot show redressability because vacating the ACIP appointments would not affect the January 2026 vaccine schedule.

Plaintiffs' alleged costs to change their public health laws are self-inflicted. Plaintiffs chose to incorporate the ACIP's and CDC's vaccine recommendations into their public health laws, and they can choose whether to untether their laws from those recommendations. Defendants obviously are not pressuring or compelling Plaintiffs to reject the very recommendations Defendants adopted.

Plaintiffs also claim the federal vaccine recommendations will reduce vaccine uptake, increase disease rates, and impose higher costs on Plaintiffs to treat disease and prevent, monitor for, and respond to outbreaks. But *Washington v. FDA*, 108 F.4th 1163 (9th Cir. 2024), rejected a similar causal chain as too attenuated. Plaintiffs' theory also requires speculation about whether patients will choose to get vaccinated after consulting with a healthcare provider and whether, if they forgo vaccination, they will develop disease and get treatment paid for by Plaintiffs.

Case No. 3:26-cv-01609-VC                1                Defs.' Reply ISO Mot. to Dismiss

Finally, *Alliance for Hippocratic Medicine* forecloses Plaintiffs' attempt to manufacture standing by expending resources on public education about vaccines. Moreover, these costs are based on Plaintiffs' fears of hypothetical future disease outbreaks that are not certainly impending.

Lacking any injury caused by the challenged actions, Plaintiffs are left with only their "policy objection[s]." *All. for Hippocratic Med.*, 602 U.S. at 381. That is insufficient, and this case should therefore be dismissed for lack of subject-matter jurisdiction.

**ARGUMENT**

## I.    Plaintiffs Lack Standing to Challenge the ACIP Appointments

Plaintiffs "must demonstrate standing for each claim," *TransUnion LLC v. Ramirez*, 594 U.S. 413, 431 (2021), yet they have not identified any cognizable harm from the ACIP appointments challenged in Count III. Plaintiffs do not dispute that they are not entitled to representation on the ACIP. *See* Mot., ECF No. 77, at 7–8. Instead, they claim the ACIP appointments undermined ACIP's "expertise," which was allegedly "the basis for Plaintiffs' historical reliance on ACIP." Opp., ECF No. 78, at 12. But that "abstract" objection to the new ACIP members' qualifications does not show a "concrete" injury to Plaintiffs. *All. for Hippocratic Med.*, 602 U.S. at 381 (quotations omitted).

Plaintiffs claim the ACIP appointments "inject[ed] immediate confusion and uncertainty into the administration of many of Plaintiff States' public health laws and regulations." Opp. 12 (alteration in original) (quoting Compl., ECF No. 1, ¶ 253). But "confusion does not constitute an actual harm to [a plaintiff]'s concrete interests." *Adams v. Skagit Bonded Collectors, LLC*, 836 F. App'x 544, 547 (9th Cir. 2020); *see DeNicolo v. Viking Client Servs., Inc.*, No. 4:19-CV-00210-YGR, 2022 WL 22913839, at *7 (N.D. Cal. Apr. 1, 2022). Moreover, this allegation is vague: Who is confused? What is confusing? And what does it mean to inject confusion "into the administration of [Plaintiffs'] public health laws," Opp. 12?

Plaintiffs have not explained how a mere change in the ACIP's membership—apart from any change to vaccine recommendations—causes confusion about the meaning or operation of state laws. Plaintiffs' actual complaint seems to be that they no longer trust the ACIP's members' qualifications and so face uncertainty whether to "untether[] their laws from CDC and ACIP." Compl. ¶ 253. As discussed above, however, merely feeling confused or uncertain is not a concrete injury. *See Adams*, 836 F. App'x at 547; *DeNicolo*, 2022 WL 22913839, at *7. To the extent Plaintiffs change their laws to untether them from the ACIP's and CDC's vaccine recommendations, that also is not a cognizable injury. *See infra* pp. 4–6.

Without any harm to show from the ACIP appointments themselves, Plaintiffs retreat to the argument that "Defendants' various unlawful actions are also closely interrelated." Opp. 13. But their attempts to blur together the challenged actions fail. Plaintiffs merely speculate that "a lawfully constituted ACIP" would not have made the Hepatitis B vaccine recommendations that the ACIP made in December 2025. *Id.*[1]

Plaintiffs also are incorrect that a May 2026 Executive Order "order[ed] ACIP to reimplement the January 2026 childhood immunization schedule." *Id.* The Executive Order did not require the ACIP to make any recommendations, but directed the ACIP and CDC to "review the [January 2026] scientific assessment and the latest clinical data and, to the extent permitted by law, take any appropriate steps to update the United States childhood and adolescent vaccine schedule." Realigning United States Core Childhood Vaccine Recommendations with Best Practices from Peer, Developed Countries, Exec. Order No. 14,407, 91 Fed. Reg. 33575, 33575 (May 29, 2026). When the ACIP reconvenes, it will continue to make independent vaccine recommendations, and

---

[1] Moreover, Plaintiffs have not shown a cognizable injury caused by the Hepatitis B recommendation. *See* Mot. 9–15; *infra* pp. 4–10.

Case No. 3:26-cv-01609-VC               3               Defs.' Reply ISO Mot. to Dismiss

the CDC Director will continue to make independent decisions about which ACIP recommendations to adopt. As before the Executive Order, the links in the causal chain between the ACIP appointments and any injury are too "speculative" and "attenuated," relying on multiple "unfettered choices . . . by independent actors." *All. for Hippocratic Med.*, 602 U.S. at 383 (quotations omitted).[2]

Finally, Plaintiffs cannot show that any harm is redressable by an order vacating the ACIP appointments. They claim that "vacating the ACIP reconstitution would redress harm by ensuring that ACIP is not populated with unqualified individuals who are subject to improper influence." Opp. 14 n.3. Noticeably absent from that statement is any mention of a *concrete harm to Plaintiffs* that would be redressed. The ACIP's membership, apart from any vaccine recommendations, does not harm Plaintiffs, *see supra* pp. 2–4, and vacating the appointments would not affect the January 2026 vaccine schedule, *see* Mot. 8–9.[3] Thus, Count III should be dismissed.

## II. Plaintiffs Cannot Show Standing Based on Their Legal Codes

*Pennsylvania v. New Jersey*, 426 U.S. 660 (1976) (per curiam), is dispositive. Pennsylvania lacked standing to challenge a New Jersey tax because it had chosen "to extend a tax credit to [its] residents for income taxes paid to [New Jersey]," and it could choose whether to "withdraw[] that credit." 426 U.S. at 664. Similarly here, Plaintiffs chose to incorporate the ACIP's and CDC's

---

[2] Although the ACIP Chair told another member that the committee felt "a little bit like puppets on a string," Opp. 4, 14 (quoting Compl. ¶ 83), it is unclear what exactly he meant. Even assuming this comment suggests that the ACIP's actions were influenced by other parties, that would not help Plaintiffs show standing because it would be yet another break in the causal chain between the ACIP appointments and any harm to Plaintiffs.

[3] It is irrelevant that "the causation and redressability requirements are relaxed once a plaintiff has established a procedural injury." Opp. 14 n.3 (quoting *California v. Azar*, 911 F.3d 558, 573 (9th Cir. 2018) (cleaned up)). Regardless of the merits of Count III, Plaintiffs were not prevented from "exercis[ing]" a "procedural right," such as "notice and opportunity to comment on" a rule. *Azar*, 911 F.3d at 570–71.

vaccine recommendations into their public health laws, and they can choose whether to "untether[]" their laws" from those recommendations. Compl. ¶ 253. In both cases, the plaintiffs' claimed injuries are "self-inflicted, resulting from decisions by their respective state legislatures." *Pennsylvania*, 426 U.S. at 664.

Plaintiffs claim that here, unlike in *Pennsylvania*, Defendants "caused direct and immediate injury to Plaintiffs' administration of their public health systems" and "compelled [Plaintiffs] to update their systems" to untether them from the ACIP's and CDC's recommendations. Opp. 14. But Plaintiffs' belief that a shared clinical decision-making recommendation is harmful, and their desire to untether their laws from federal recommendations, is based on their *disagreement* with federal vaccine policy. Defendants adopted a shared clinical decision-making recommendation for the vaccines at issue because they believe it best promotes public health; they obviously have not "pressured" or "compelled" Plaintiffs to reject those recommendations. *Id.* 9, 14–15.[4] Of course, Plaintiffs are free to do so, and some already have, but any costs incurred in rejecting Defendants' recommendations are self-inflicted.[5]

Contrary to Plaintiffs' argument, *Washington v. Trump*, 145 F.4th 1013 (9th Cir. 2025), *cert. denied*, No. 25-364, 2026 WL 1871300 (U.S. June 30, 2026), does not grant States standing whenever "federal action causes 'additional expenses [to be] incurred' by states for 'the development of a new system.'" Opp. 9 (alteration in original) (quoting *Washington v. Trump*, 145

---

[4] Defendants also are not forcing Plaintiffs to choose "between incurring costs and changing" their laws. Opp. 9 (quoting *Texas v. United States*, 787 F.3d 733, 749 (5th Cir. 2015)). The alleged costs to Plaintiffs from shared clinical decision-making recommendations are speculative and attenuated. *See infra* pp. 6–10.

[5] Plaintiffs also claim they are directly harmed because "more kids enrolled in state Medicaid programs" will get sick and thus increase state Medicaid costs. Opp. 14–15. For the reasons discussed below (apart from the "self-inflicted" issue), this argument fails to show standing. *See infra* pp. 6–10. Plaintiffs also cannot show standing by providing information to "mitigate . . . confusion." Opp. 14; *see infra* p. 10.

F.4th at 1023). In that case, "federal law *require[d]* the States to determine whether each resident served by federal benefits is eligible," and thus, after an Executive Order changed eligibility requirements, the States were *required* to "create new systems to . . . maintain compliance with federal law." *Washington v. Trump*, 145 F.4th at 1023–24 (emphasis added). Here, by contrast, federal law does not require Plaintiffs to change their public health systems. Plaintiffs may choose to do so because they disagree with federal vaccine policy, but that is not compelled by Defendants and does not support standing.[6]

### III. Plaintiffs Cannot Show Standing on the Theory that Increased Rates of Vaccine-Preventable Diseases Will Burden Plaintiffs' Resources

Plaintiffs' allegedly increased healthcare costs and costs to prevent, monitor for, and respond to outbreaks are too attenuated and speculative to support standing. Mot. 10–14. As Defendants explained in their opening brief, *id.* at 11–12, the Ninth Circuit rejected a similar standing theory in *Washington v. FDA*, a challenge to FDA's regulation of mifepristone. The Circuit held that proposed intervenor-plaintiff States lacked standing because "an alleged uptick in Medicaid costs is exactly the kind of 'indirect effect[] on . . . state spending' that the Supreme Court has rejected" as insufficient. 108 F.4th at 1176 (alterations in original) (quoting *United States v. Texas*, 599 U.S. 670, 680 n.3 (2023)).[7] "Allowing [the States] to proceed based on predictions of increased emergency-room visits alone would give not just states, but every entity that provides health insurance or subsidized medical care, standing 'to challenge any FDA decision

---

[6] The plaintiffs in *Washington v. Trump* also had standing because "the direct effect of the challenged federal action is to decrease the number of people for which the state will receive federal funding and 'administrative fees.'" 145 F.4th at 1023 (quoting *Biden v. Nebraska*, 600 U.S. 477, 477, 489 (2023)). No such harm is alleged here.

[7] *United States v. Texas* noted that a theory of State standing based on federal policies' "indirect effects on state revenues or state spending" could be too attenuated. 599 U.S. at 680 n.3. That observation was not limited to the context of immigration enforcement. *Contra* Opp. 11–12 n.2.

approving a new drug'"—a "boundless conception of Article III's injury requirement." *Id.* (quoting *All. for Hippocratic Med.*, 602 U.S. at 392).

Plaintiffs fail to distinguish *Washington v. FDA*. The alleged "disruption of their public health systems," Opp. 12, does not support standing. *See supra* pp. 4–6. And their allegedly higher healthcare costs are not based "on the predictable effect of Government action on the decisions of third parties." Opp. 12 (quotations omitted); *see* Mot. 10–14; *infra* pp. 7–10. Moreover, predictability goes to whether an alleged injury is speculative, not whether it is attenuated. Thus, Plaintiffs cannot escape *Washington v. FDA*'s holding that the same "causal chain" alleged here— a governmental action allegedly leads to increased injury/disease, leading to more people seeking medical care, leading to increased State Medicaid costs—"is too attenuated." 108 F.4th at 1176.

Contrary to Plaintiffs' claim that their alleged injuries "are the logical and foreseeable consequence of Defendants' actions," Opp. 10, the links in Plaintiffs' causal chain are "too speculative" to support standing, *All. for Hippocratic Med.*, 602 U.S. at 383 (citing *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 410–411 (2013)). Defendants recommend the vaccines at issue based on shared clinical decision-making, meaning the vaccination decision is "individually based and informed by a decision process between the health care provider and the patient or parent/guardian." CDC, *ACIP Shared Clinical Decision-Making Recommendations* (Jan. 7, 2025), https://perma.cc/QE5B-D8WU. Whether this recommendation results in lower vaccine uptake "depend[s] on the independent actions of doctors and [patients] whose medical decisionmaking is informed by a wide range of individualized considerations that are difficult to predict." *Washington v. FDA*, 108 F.4th at 1175. Plaintiffs cannot show standing by "'speculat[ing] about the unfettered [vaccination] choices made by [these] independent actors not before the courts,'" where "it is not sufficiently predictable" how those actors will make those choices. *All. for Hippocratic Med.*, 602

U.S. at 383 (quoting *Clapper*, 568 U.S. at 415 n.5). Moreover, if a person forgoes vaccination without consulting with a healthcare provider—contrary to Defendants' recommendations—that obviously is not traceable to those recommendations.

Plaintiffs' causal theory requires several more layers of speculation. Even if patients forego vaccination, it is speculative whether they will develop vaccine-preventable disease, whether they will receive treatment, and whether such treatment will be compensated by Plaintiffs. Mot. 13–14. In sum, Plaintiffs assert "an 'indirect' effect on state spending" that relies on "a chain of causation with multiple links" and "the unpredictable actions of third parties." *Washington v. Trump*, 145 F.4th at 1023.

In their attempt to salvage their causal theory, Plaintiffs mischaracterize the CDC vaccine schedule. It does not "communicate[] that children should get fewer vaccinations," Opp. 6, but simply recommends that patients discuss with a healthcare provider whether to administer the vaccines at issue.[8] Nor does it "spread[] and reinforc[e] inaccurate information about the safety and efficacy of the" vaccines or "[s]uggest[] [they] are not safe enough to be routinely recommended." *Id.* 6, 10–11 (quotations omitted). What CDC has said is that "[g]enerally, ACIP makes shared clinical decision-making recommendations when individuals may benefit from vaccination, but broad vaccination of people in that group is unlikely to have population-level impacts." CDC, *ACIP Shared Clinical Decision-Making Recommendations*, FAQs. Finally, CDC's recommendations do not create "a barrier to getting vaccinated" for "Americans without usual primary care access," Opp. 6–7 (quotations omitted), because shared clinical decision-making can

---

[8] Plaintiffs cite no factual support for their contention that "[r]educing vaccination rates is Defendants' avowed intent," Opp. 10, and that claim is inconsistent with Defendants' explanation of the January 2026 schedule, *see* Decision Memo from Jay Bhattacharya, Mehmet Oz, and Marty Makary to Jim O'Neill (Jan. 5, 2026), https://www.hhs.gov/sites/default/files/decision-memo-adopting-revised-childhood-adolescent-immunization-schedule.pdf.

be provided by many types of healthcare providers, including pharmacists, *see* CDC, *ACIP Shared Clinical Decision-Making Recommendations*, FAQ. Because Plaintiffs' allegations "are contradicted by documents referred to in the complaint," they are not presumed true. *Paulsen v. CNF Inc.*, 559 F.3d 1061, 1071 (9th Cir. 2009); *see, e.g.*, Compl. ¶¶ 1, 126.

The cases Plaintiffs cite involve far more direct causal chains. In *Department of Commerce v. New York*, "the reinstatement of a [census] citizenship question" would predictably "result in noncitizen households responding to the census at lower rates than other groups, which in turn would cause them to be undercounted" and cause States to "lose out on federal funds that are distributed on the basis of state population." 588 U.S. 752, 767 (2019). In *City & County of San Francisco v. U.S. Citizenship & Immigration Services*, a federal rule caused immigrants to withdraw from federal assistance programs and "instead turn to assistance programs administered by the state[s]"—an effect the rule itself acknowledged. 981 F.3d 742, 754 (9th Cir. 2020). Similarly, in *Massachusetts v. U.S. Department of Health & Human Services*, federal rules allowing employers to be exempted from providing health insurance coverage for contraceptive care increased States' healthcare costs because "a portion of the women who would lose contraceptive coverage would then obtain state-funded contraceptive care or state-funded prenatal care for unintended pregnancies"—additional costs the defendants had acknowledged. 923 F.3d 209, 225–26 (1st Cir. 2019). Here, by contrast, Plaintiffs' alleged causal chain is far more attenuated and speculative.

Plaintiffs' other cases are equally inapposite. In *Biden v. Nebraska*, the federal government's discharge of student loan debt would harm a State instrumentality that serviced those loans, costing it "$44 million a year in fees that it otherwise would have earned under its contract with the Department of Education." 600 U.S. at 490. There is no similar loss to contractual

revenues here. And in *New York v. Kennedy*, States were harmed when federal labs stopped providing "infectious disease and STD/STI confirmatory testing" that the States had relied on. 155 F.4th 67, 73 (1st Cir. 2025). Here, by contrast, Defendants have not stopped providing any services to Plaintiffs, but have simply adopted new vaccine recommendations with which Plaintiffs disagree.

In sum, Plaintiffs' theory that decreased vaccine uptake will cause them to incur higher healthcare costs and costs to prevent, monitor for, and respond to outbreaks is too attenuated and speculative to support standing.

### IV. Plaintiffs Cannot Show Standing Based on Providing Vaccine Information

Plaintiffs claim they are "spending money on public education" to remediate "confusion and uncertainty" caused by Defendants and "thereby mitigate the spread of vaccine-preventable disease." Opp. 10 (quotations omitted). But the plaintiffs in *Alliance for Hippocratic Medicine* similarly claimed the defendants "forced" them to expend resources on "public education" in response to the challenged actions, yet the Supreme Court rejected this attempt to "spend [their] way into standing." 602 U.S. at 394. Plaintiffs also may not "manufacture standing merely by inflicting harm on themselves based on their fears of hypothetical future harm that is not certainly impending," *Clapper*, 568 U.S. at 416, such as speculation that residents will forego vaccination, develop disease, and increase State healthcare costs, Mot. 15.

It is irrelevant that Plaintiffs' educational expenses partly respond to "provider and public outreach." Opp. 10. Plaintiffs are choosing to expend resources on this education, and Defendants are not requiring it. This theory, like all the others, cannot support standing.

**CONCLUSION**

For these reasons, and those discussed in Defendants' opening brief, the Court should dismiss this case for lack of subject-matter jurisdiction.

July 30, 2026

Respectfully submitted,

BRETT A. SHUMATE
Assistant Attorney General

ERIC J. HAMILTON
Deputy Assistant Attorney General

ERIC B. BECKENHAUER
Assistant Director

JAMES W. HARLOW
Senior Trial Counsel

*/s/ Isaac C. Belfer*
ISAAC C. BELFER (D.C. Bar No. 1014909)
Trial Attorney
Federal Programs Branch
Civil Division
U.S. Department of Justice
1100 L Street, NW
Washington, DC 20005
(202) 305-7134
(202) 514-8742 (fax)
Isaac.C.Belfer@usdoj.gov

*Counsel for Defendants Robert F. Kennedy, Jr., in his official capacity as Secretary of HHS; HHS; Jayanta Bhattacharya, in his official capacity as Acting Director of CDC; and CDC*

**CERTIFICATE OF SERVICE**

I hereby certify that this document, filed through the CM/ECF system, will be sent via electronic mail to the registered participants as identified on the Notice of Electronic Filing.

July 30, 2026                              */s/ Isaac C. Belfer*
                                           Isaac C. Belfer