UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| STATE OF ARIZONA, et al.,<br>Plaintiffs,<br>v.<br>ROBERT KENNEDY, et al.,<br>Defendants. | Case No. 26-cv-01609-VC<br><br>**ORDER GRANTING IN PART AND DENYING IN PART MOTION TO DISMISS**<br><br>Re: Dkt. No. 77 |

The motion to dismiss for lack of standing is granted as to the ACIP claims and is denied as to the remaining claims. This order assumes that the reader is familiar with the facts, the applicable laws, regulations, and legal standards, and the arguments made by the parties.

To establish Article III standing, a plaintiff must allege "(i) that she has suffered or likely will suffer an injury in fact, (ii) that the injury likely was caused or will be caused by the defendant, and (iii) that the injury likely would be redressed by the requested judicial relief." *FDA v. Alliance for Hippocratic Medicine*, 602 U.S. 367, 380 (2024). A State may establish standing by claiming "a concrete impact on state revenues that is caused by the defendant's allegedly unlawful conduct." *Washington v. FDA*, 108 F.4th 1163, 1175 (9th Cir. 2024). The alleged costs need not be the direct result of the conduct at issue. But when costs are incurred only indirectly because of "the government's allegedly unlawful lack of regulation of someone else, . . . much more is needed to establish causation and redressability." *Id*. (quoting *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 562 (1992)). "[T]here must be a strong 'causal chain' that 'links' the federal action to the alleged harm." *Id*. (quoting *California v. Azar*, 911 F.3d 558, 571-72 (9th Cir. 2018)).

1. *The CDC's December 16, 2025, Decision and the Kennedy Schedule*. The States have standing to challenge the CDC's elimination of the recommendation for the universal birth dose of the hepatitis B vaccine, as well as the defendants' changes to the childhood immunization schedule because they have plausibly alleged that those decisions will likely increase the cost of operating state healthcare programs and impose administrative burdens associated with adjusting state laws.

The government relies on *Washington v. FDA*, 108 F.4th 1163 (9th Cir. 2024), to argue that the States' alleged causal chain is too attenuated and speculative. In that case, the Ninth Circuit rejected Idaho's theory that it had standing to challenge the FDA's elimination of the in-person dispensing requirement for mifepristone, which it alleged would "cause more providers to dispense mifepristone to women with contraindications, which in turn will lead more women to experience complications that require follow-up care, which will harm the state because some portion of the aggregate cost of that follow-up care will be borne by Idaho through Medicaid expenditures." *Id*. at 1175 (citation modified). The panel explained that Idaho's theory was too attenuated in part because "links in this chain depend on the independent actions of doctors and pregnant women whose medical decisionmaking is informed by a wide range of individualized considerations that are difficult to predict." *Id*. The panel further noted that the hypothetical risks identified by Idaho would materialize only if one or more independent actors decided to violate state laws restricting abortion.

The causal chain here is much less attenuated. The States allege that the Kennedy Schedule will raise the costs of responding to outbreaks of vaccine-preventable diseases caused by lower vaccination rates. *See* Complaint ¶ 240; *see also id*. ¶¶ 154, 163-64, 173, 184-87, 201, 219 (alleging the efficacy of the demoted vaccines). Unlike in *Washington v. FDA*, the States here need not speculate about patients' violations of state laws or doctors' failure to perform their duties to check for contraindications. Indeed, their complaint straightforwardly explains how "third parties will likely react . . . in predictable ways that will likely cause . . . the plaintiff's injury." *Diamond Alternative Energy, LLC v. EPA*, 606 U.S. 100, 112 (2025) (citation modified)

(quoting *Alliance for Hippocratic Medicine*, 602 U.S. at 383); *see, e.g.*, Complaint ¶¶ 154, 236-38.

The defendants emphasize that they do not recommend against vaccination and that they merely recommend that patients engage in "shared clinical decision-making" with their healthcare providers. But the States plausibly allege that demoting a vaccine from "universally recommended" to "shared clinical decision-making" will predictably lead to less vaccine uptake population-wide, even if each individual's vaccination decisions are highly personalized. And it is plausible that population-wide decreases in vaccine uptake will create a substantial risk of more vaccine-preventable disease outbreaks. *See Department of Commerce v. New York*, 588 U.S. 752, 767-68 (2019) (holding that the States had established standing by demonstrating that aggregate response rates to the census would decrease if a citizenship question were added).

The States also allege that, under the Kennedy Schedule, they will bear the cost of reimbursing healthcare providers for vaccine-related consultations that would not have occurred had the prior universal recommendations remained place. *See* Complaint ¶¶ 279, 282. That pocketbook injury is separate from the risk of increased disease outbreaks and is also a natural and predictable outcome of recommending that patients engage in "shared clinical decision-making" for vaccines that were universally recommended under the prior schedule.

Furthermore, the administrative burdens flowing from the defendants' changes to the vaccine recommendations are cognizable injuries. Citing *Pennsylvania v. New Jersey*, 426 U.S. 660 (1976), the government argues that such harms are entirely "self-inflicted because States have always been free to set their own vaccine policies." Motion at 9. But in that case, the Supreme Court held that Pennsylvania, which extended tax credits to its residents for any income tax paid to other states, lacked standing to sue New Jersey for taxing Pennsylvania residents at a different rate. *Id.* at 663-64. Central to the Court's reasoning was that states could choose to structure their own tax regimes independently from one another. Because nothing about New Jersey's conduct required Pennsylvania to continue offering tax credits to residents who paid New Jersey taxes, any lost revenue attributable to Pennsylvania's tax-credit program was

"inflicted by its own hand." *Id*. at 664.

Here, by contrast, States cannot promulgate vaccine-related laws and regulations on a blank slate; they must act against the backdrop of a baseline federal legal regime. Federal law requires the CDC to "assist States and their political subdivisions in the prevention and suppression of communicable diseases" and to "advise the several States on matters relating to the preservation and improvement of public health." 42 U.S.C. § 243(a). And laws setting forth minimum standards for healthcare coverage are tied to the CDC's official vaccination schedule. *See, e.g.*, 42 U.S.C. § 300gg-13(a)(2) (requiring health insurance providers to cover "immunizations that have in effect a recommendation" from ACIP); 45 C.F.R. § 147.130(a)(1)(ii) (defining recommendations "in effect" from ACIP as those adopted by the CDC). Therefore, given the CDC's central role in disease control and in establishing minimum standards for vaccine coverage, the administrative costs incurred by the States to fill any gaps left by CDC's alleged failure to promulgate an adequate vaccine schedule are cognizable injuries.

2. *ACIP's Hepatitis B Recommendations*. To the extent that the States allege injuries flowing from their decision to tether laws to ACIP's recommendations, rather than the CDC's adoption of ACIP's recommendations, they lack standing because those injuries are "self-inflicted." *See Pennsylvania*, 426 U.S. at 664. Unlike the CDC's decisions, which directly alter the federal legal landscape against which the States must regulate, the ACIP recommendations at issue do not impact the States by operation of federal law until they are adopted by the CDC. *See* 45 C.F.R. § 147.130(a)(1)(ii). Therefore, any costs incurred by the States to respond to the ACIP recommendations at issue are "self-inflicted" in a way that the States' decision to respond to the CDC's decisions is not. *Pennsylvania*, 426 U.S. at 664.[1]

[1] The States point out that ACIP is entrusted with revising the schedule for pediatric vaccines covered by the Vaccines for Children Program (VFC), and those decisions seemingly do not require CDC approval. *See* Opposition at 2 (citing 42 U.S.C. § 1396s(e)). But ACIP's VFC decisions are not at issue in this case. The government explains that "all the vaccines at issue are still covered by the VFC Program." Motion at 15; *see also* Complaint ¶ 320. And the

3. *ACIP Appointments*. The States lack standing to challenge the ACIP appointments. The States argue that the defendants' replacement of qualified experts with unqualified "puppets on a string" undermined the basis for the States' "historical reliance" on the ACIP's scientific expertise. *See* Opposition at 12-14 (quoting Complaint ¶ 83). Partly for the reasons discussed in the preceding paragraph, any alleged harms arising from ACIP's reconstitution are not cognizable or fairly traceable to the defendants. Moreover, the alleged harms are not redressable by the requested relief. The States do not adequately allege how vacating the appointments would cause their replacements to make different recommendations, nor how those hypothetical recommendations would cause the defendants to make other policy decisions. In fact, the States' own allegations that the defendants entirely bypassed ACIP to implement the Kennedy Schedule underscore the uncertain relationship between ACIP's recommendations and the defendants' decisions. *See* Complaint ¶ 118.

* * *

Although the Court is skeptical that the States would be able to successfully allege standing to assert the ACIP claims in an amended complaint, in an abundance of caution, dismissal of these claims is with leave to amend. Any amended complaint must be filed within 21 days of this ruling.

**IT IS SO ORDERED.**

Dated: September 8, 2026

VINCE CHHABRIA
United States District Judge

---

States themselves allege that they are "presently unaware of an impact on the coverage or availability of the vaccines" through VFC and similar programs. *Id* ¶ 321. To the extent the States are challenging speculative changes that ACIP might make in the future to the VFC program, they lack standing to do so.