BRETT A. SHUMATE
Assistant Attorney General
ERIC BECKENHAUER
Assistant Director
JAMES W. HARLOW (Md. Bar, no number issued)
Senior Trial Counsel
ISAAC C. BELFER (D.C. Bar No. 1014909)
Trial Attorney
Federal Programs Branch
U.S. Department of Justice
1100 L Street, N.W.
Washington, D.C. 20005
(202) 305-7134
Isaac.C.Belfer@usdoj.gov

*Counsel for Defendants (see signature page for complete list)*

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**
**SAN FRANCISCO DIVISION**

| | |
|---|---|
| STATE OF ARIZONA, *et al.*,<br><br>Plaintiffs,<br><br>v.<br><br>ROBERT F. KENNEDY, JR., *et al.*,<br><br>Defendants. | Case No. 3:26-cv-01609-VC<br><br>DEFENDANTS' NOTICE OF MOTION TO DISMISS THE AMENDED COMPLAINT FOR LACK OF SUBJECT-MATTER JURISDICTION AND FAILURE TO STATE A CLAIM FOR RELIEF; MOTION TO DISMISS; AND MEMORANDUM OF POINTS AND AUTHORITIES<br><br>Hearing Date: December 15, 2026<br>Time: 1:00 p.m.<br>Judge: Hon. Vince Chhabria<br>Place: San Francisco Courthouse<br>Courtroom 3, 17th Floor |

## NOTICE OF MOTION

PLEASE TAKE NOTICE that on December 15, 2026, at 1:00 p.m., in the United States Courthouse at 450 Golden Gate Avenue, 17th Floor, Courtroom 3, San Francisco, CA 94102, before the Honorable Vince Chhabria, Defendants will move to dismiss the Amended Complaint.

## MOTION TO DISMISS

Defendants hereby move to dismiss the Amended Complaint under Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6) for lack of subject-matter jurisdiction and failure to state a claim for relief. The reasons for this motion are set forth in the following memorandum.

# TABLE OF CONTENTS


INTRODUCTION ..... 1

STATEMENT OF THE ISSUES ..... 1

BACKGROUND ..... 2

I. The Advisory Committee on Immunization Practices ..... 2

II. The December 2025 Hepatitis B Vaccine Recommendations ..... 2

III. The January 2026 Vaccine Recommendations ..... 3

LEGAL STANDARD ..... 4

ARGUMENT ..... 4

I. The ACIP Appointments and the ACIP's Hepatitis B Recommendations Were Not Final Agency Action ..... 4

A. No "Agency Action" ..... 5

B. No "Final Agency Action" ..... 6

II. Plaintiffs Still Fail to Show Standing to Challenge the ACIP Appointments and the ACIP's Hepatitis B Recommendations ..... 7

A. Plaintiffs Are Not Entitled to Representation on the ACIP ..... 7

B. Plaintiffs' Reliance on the ACIP's Recommendations Is Self-Inflicted ..... 7

C. Plaintiffs' Remaining Theories Fail for Lack of Traceability ..... 10

D. Plaintiffs Fail to Show Redressability ..... 11

E. Plaintiffs' Procedural-Injury Theory Fails ..... 12

III. The ACIP Appointments Are Committed to Agency Discretion ..... 13

IV. Plaintiffs Do Not Plausibly Allege Inappropriate Influence ..... 15

CONCLUSION ..... 15

## TABLE OF AUTHORITIES

### CASES

*Amoco Prod. Co. v. Watson*,
410 F.3d 722 (D.C. Cir. 2005). .......... 5

*Ariz. All. for Retired Ams. v. Mayes*,
186 F.4th 622 (9th Cir. 2026) .......... 10

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) .......... 4, 15

*Avoy v. Turtle Mountain, LLC*,
No. 13-CV-0236-LHK, 2014 WL 587173 (N.D. Cal. Feb. 14, 2014) .......... 2

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007) .......... 4, 15

*Bennett v. Spear*,
520 U.S. 154 (1997) .......... 6, 7

*Brownback v. King*,
592 U.S. 209 (2021) .......... 4

*California v. Azar*,
911 F.3d 558 (9th Cir. 2018) .......... 8, 9

*Center for Policy Analysis on Trade and Health (CPATH) v. Office of U.S. Trade Representative*,
540 F.3d 940 (9th Cir. 2008) .......... 14, 15

*Clapper v. Amnesty Int'l USA*,
568 U.S. 398 (2013) .......... 10

*Colo. Env't Coal. v. Wenker*,
353 F.3d 1221 (10th Cir. 2004) .......... 15

*Ctr. for Biological Diversity v. Mattis*,
868 F.3d 803 (9th Cir. 2017) .......... 12, 13

*DaimlerChrysler Corp. v. Cuno*,
547 U.S. 332 (2006) .......... 4

*Dalton v. Specter*,
511 U.S. 462 (1994) .......... 7

*FDA v. All. for Hippocratic Med.*,
602 U.S. 367 (2024) .......... 9, 10, 11

*Franklin v. Massachusetts*,
505 U.S. 788 (1992) .......... 7

*Heckler v. Chaney,*
470 U.S. 821 (1985) .......... 13, 14

*Int'l Tel. & Tel. Corp., Commc'ns Equip. & Sys. Div. v. Loc. 134, Int'l Bhd. of Elec. Workers, AFL-CIO*,
419 U.S. 428 (1975) .......... 5

*Lujan v. Nat'l Wildlife Fed'n*,
497 U.S. 871 (1990) .......... 6

*Norton v. S. Utah Wilderness All.*,
542 U.S. 55 (2004) .......... 6

*PayServices Bank v. Fed. Rsrv. Bank of S.F.*,
No. 1:23-CV-00305-REP, 2024 WL 1347094 (D. Idaho Mar. 30, 2024) .......... 5

*Pennsylvania v. New Jersey*,
426 U.S. 660 (1976) .......... 8, 10

*Physicians Committee for Responsible Medicine v. Vilsack*,
No. 16-cv-69-LB, 2016 WL 5930585 (N.D. Cal. Oct. 12, 2016) .......... 14, 15

*Pinnacle Armor, Inc. v. United States*,
648 F.3d 708 (9th Cir. 2011) .......... 14

*Pub. Citizen v. Nat'l Advisory Comm. on Microbiological Criteria for Foods,*
886 F.2d 419 (D.C. Cir. 1989) .......... 11

*Pub. Citizen v. U.S. Dep't of Just.*,
491 U.S. 440 (1989) .......... 12

*S.F. Herring Ass'n v. U.S. Dep't of Interior*,
946 F.3d 564 (9th Cir. 2019) .......... 4

*Spencer Enters., Inc. v. United States*,
345 F.3d 683 (9th Cir. 2003) .......... 13, 14

*Steel Co. v. Citizens for a Better Env't*,
523 U.S. 83 (1998) .......... 4

*W. Coal Traffic League v. Surface Transportation Bd.*,
998 F.3d 945 (D.C. Cir. 2021) .......... 12

**STATUTES**

5 U.S.C. § 551 .......... 5

5 U.S.C. § 701 .......... 5, 13, 14

5 U.S.C. § 704 .......... 4, 7

5 U.S.C. § 1004 .......... 12, 14, 15

42 U.S.C. § 217a .......... 2, 13, 14

42 U.S.C. § 300gg-13 .......... 3

**REGULATIONS**

26 C.F.R. § 54.9815-2713 .......... 3

29 C.F.R. § 2590.715-2713 .......... 3

41 C.F.R. § 102-3.5 (May 20, 2024 ed.) .......... 12

41 C.F.R. § 102-3.60(b)(3)(ii) (May 20, 2024 ed.) .......... 12

45 C.F.R. § 147.130 .......... 3, 6

**OTHER AUTHORITIES**

ACIP, June 25–26, 2025 Meeting Summary,
https://perma.cc/WEP5-K2LD .......... 8

ACIP Charter (filed May 27, 2026),
https://perma.cc/8GC7-7UAC .......... 2, 6

*ACIP Policies and Procedures* (June 2022),
https://www.cdc.gov/acip/downloads/Policies-Procedures-508.pdf .......... 12

CDC, *ACIP Membership Roster* (Mar. 2, 2026),
https://perma.cc/S4C8-JMHK .......... 2

CDC, *ACIP Recommends Individual-Based Decision-Making for Hepatitis B Vaccine for Infants Born to Women Who Test Negative for the Virus* (Dec. 5, 2025),
https://perma.cc/QQ8P-DVNQ .......... 3

CDC, *ACIP Shared Clinical Decision-Making Recommendations* (Jan. 7, 2025),
https://perma.cc/QE5B-D8WU .......... 3

CDC, Press Release, *CDC Adopts Individual-Based Decision-Making for Hepatitis B Immunization for Infants Born to Women Who Test Negative for Hepatitis B Virus* (Dec. 16, 2025),
https://perma.cc/6R3R-E2HJ .......... 3

Decision Memo from Jay Bhattacharya, Mehmet Oz, and Marty Makary to Jim O'Neill (Jan. 5, 2026), https://perma.cc/T4FW-XM3X ..... 3, 4

HHS, *Fact Sheet: CDC Childhood Immunization Recommendations* (last reviewed Jan. 5, 2026), https://perma.cc/DSL3-HWAJ ..... 4

U.S. Dep't of Health & Human Servs. ("HHS"), Press Release, *HHS Takes Bold Step to Restore Public Trust in Vaccines by Reconstituting ACIP* (June 9, 2025), https://perma.cc/C5YC-Q7ZA ..... 2

## Introduction

This Court dismissed the Advisory Committee on Immunization Practices ("ACIP") claims in Plaintiffs' original complaint for lack of standing. ECF No. 84 at 5 ("MTD Order"). While it granted leave to amend "in an abundance of caution," it was "skeptical that the States would be able to successfully allege standing" for those claims. *Id.* That skepticism was well founded. Plaintiffs' 482-paragraph Amended Complaint still fails to show standing for the ACIP claims and has several other jurisdictional and pleading deficiencies. Plaintiffs' ACIP claims should again be dismissed.

First, the most straightforward reason why the Court lacks jurisdiction over Plaintiffs' ACIP claims is that they do not challenge final agency action. The ACIP is not an "agency"; the ACIP appointments and Hepatitis B recommendations do not meet the "agency action" definition (*e.g.*, they were not rules or orders); and they also are not "final agency action" because they did not mark the consummation of the agency's decisionmaking process or have any legal consequences.

Second, Plaintiffs still fail to show standing. They have not remedied the fatal flaws the Court identified: any alleged harms based on their reliance on ACIP recommendations are self-inflicted, and Plaintiffs can only speculate that a favorable judgment would cause the ACIP to make recommendations they support and cause CDC to adopt those recommendations.

Third, the ACIP appointments are committed to agency discretion because the relevant statutes provide no meaningful standard against which to judge the agency's exercise of discretion.

Finally, Plaintiffs do not plausibly allege a violation of the Federal Advisory Committee Act of 1972's ("FACA") "inappropriately influenced" provision because they offer only conclusory assertions unsubstantiated by factual support.

## Statement of the Issues

Whether the Court lacks subject-matter jurisdiction because the ACIP appointments and

Hepatitis B recommendations are not final agency action, Plaintiffs lack standing to challenge those actions, and the ACIP appointments are committed to agency discretion by law, and whether Plaintiffs fail to plausibly allege a violation of FACA's "inappropriately influenced" provision.

## BACKGROUND

### I. The Advisory Committee on Immunization Practices

The Secretary may "appoint such advisory councils or committees . . . as he deems desirable . . . for the purpose of advising him." 42 U.S.C. § 217a(a). Exercising that discretion, the Secretary established the ACIP to advise the CDC Director "regarding the use of vaccines . . . for the prevention and control of vaccine-preventable diseases." ACIP Charter, at 2 (filed May 27, 2026), https://perma.cc/8GC7-7UAC.[1] The CDC Director reviews the ACIP's recommendations and decides whether to adopt them as official recommendations. *Id.* at 1.

In June 2025, Secretary Kennedy removed the then-serving ACIP members. U.S. Dep't of Health & Human Servs. ("HHS"), Press Release, *HHS Takes Bold Step to Restore Public Trust in Vaccines by Reconstituting ACIP* (June 9, 2025), https://perma.cc/C5YC-Q7ZA. He has since appointed 16 new ACIP members.[2] *See* CDC, *ACIP Membership Roster* (Mar. 2, 2026), https://perma.cc/S4C8-JMHK. Up to four seats on the ACIP remain vacant.

### II. The December 2025 Hepatitis B Vaccine Recommendations

In December 2025, the ACIP voted, among other things, to recommend shared clinical decision-making "for parents deciding whether to give the hepatitis B vaccine, including the birth

---

[1] In resolving a motion to dismiss, "a court may take judicial notice of documents referenced in the complaint, as well as matters in the public record," including "materials available on government websites." *Avoy v. Turtle Mountain, LLC*, No. 13-CV-0236-LHK, 2014 WL 587173, at *2 n.2 (N.D. Cal. Feb. 14, 2014).

[2] One of those appointees, Dr. Kulldorff, is no longer a member of the ACIP.

dose, to infants born to women who test negative for the virus." CDC, *ACIP Recommends Individual-Based Decision-Making for Hepatitis B Vaccine for Infants Born to Women Who Test Negative for the Virus* (Dec. 5, 2025), https://perma.cc/QQ8P-DVNQ. "Shared clinical decision-making" means the vaccination decision is "individually based and informed by a decision process between the health care provider and the patient or parent/guardian." CDC, *ACIP Shared Clinical Decision-Making Recommendations* (Jan. 7, 2025), https://perma.cc/QE5B-D8WU. Vaccines administered through shared clinical decision-making, when that is recommended by CDC, generally must be covered by insurers without cost-sharing. *Id.* at FAQ & n.A (citing 42 U.S.C. § 300gg-13; 26 C.F.R. § 54.9815-2713(a)(1)(ii); 29 C.F.R. § 2590.715-2713(a)(1)(ii); 45 C.F.R. § 147.130(a)(1)(ii)). CDC adopted the ACIP's recommendations. CDC, Press Release, *CDC Adopts Individual-Based Decision-Making for Hepatitis B Immunization for Infants Born to Women Who Test Negative for Hepatitis B Virus* (Dec. 16, 2025), https://perma.cc/6R3R-E2HJ.

## III. The January 2026 Vaccine Recommendations

On January 5, 2026, CDC's then–Acting Director approved a new immunization schedule. *See* Decision Memo from Jay Bhattacharya, Mehmet Oz, and Marty Makary to Jim O'Neill, at 8–9 (Jan. 5, 2026) ("Decision Memo"), https://perma.cc/T4FW-XM3X. Following CDC's existing recommendation structure, the schedule included three recommendation categories. In the first category, vaccines for 11 diseases were recommended for all children: Measles, Mumps, Rubella, Diphtheria, Tetanus, Pertussis, Polio, Hib, Pneumococcal Disease, HPV, and Varicella (Chickenpox). *Id.* at 8. No changes were made to the second category: "Immunizations Recommended for Certain High-Risk Groups or Populations." *Id.* at 5. In the third category, vaccines for six diseases were recommended based on shared clinical decision-making: Hepatitis A, Hepatitis B, Rotavirus, Meningococcal Disease, Influenza, and COVID-19. *Id.* at 5–8. "[A]ll these vaccines will continue to be available for anyone who wants them and will be covered by

Medicaid, [the Children's Health Insurance Program], the Vaccines for Children ['VFC'] Program, and private health insurance." *Id.* at 2–3, 5.[3]

## LEGAL STANDARD

Subject-matter jurisdiction must "be established as a threshold matter," *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 94–95 (1998), and the Court is "presume[d]" to "lack jurisdiction" unless Plaintiffs meet their "burden of establishing it," *DaimlerChrysler Corp. v. Cuno*, 547 U.S. 332, 342 n.3 (2006) (quotations omitted). Plaintiffs' non-conclusory, non-speculative allegations must "plausibly allege all jurisdictional elements." *Brownback v. King*, 592 U.S. 209, 217 (2021).

Under Rule 12(b)(6), the Court must dismiss the complaint unless Plaintiffs have "state[d] a plausible claim for relief." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009). They must plead sufficient "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 678; *see also Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) ("Factual allegations must be enough to raise a right to relief above the speculative level."). The Court accepts as true Plaintiffs' "well-pleaded factual allegations" but not "conclusory statements" or "legal conclusions." *Iqbal*, 556 U.S. at 678–79.

## ARGUMENT

### I. The ACIP Appointments and the ACIP's Hepatitis B Recommendations Were Not Final Agency Action

This Court has jurisdiction to review only "final agency action[s]." 5 U.S.C. § 704; *see S.F. Herring Ass'n v. U.S. Dep't of Interior*, 946 F.3d 564, 571 (9th Cir. 2019). And "[f]or there to be 'final agency action,' there must first be 'agency action.'" *S.F. Herring Ass'n*, 946 F.3d at 575 (citation omitted). But the ACIP appointments and Hepatitis B recommendations were neither

[3] *See* HHS, *Fact Sheet: CDC Childhood Immunization Recommendations* (last reviewed Jan. 5, 2026), https://perma.cc/DSL3-HWAJ.

"agency action" nor "final agency action."

**A. No "Agency Action"**

The Administrative Procedure Act ("APA") defines "agency action" to mean "the whole or a part of an agency rule, order, license, sanction, relief, or the equivalent or denial thereof, or failure to act." 5 U.S.C. § 551(13). As an initial matter, the ACIP is not an "agency," defined as "each authority of the Government of the United States," *id.* § 701(b)(1), because it is purely advisory and does not "exercise substantial independent authority on behalf of the government." *PayServices Bank v. Fed. Rsrv. Bank of S.F.*, No. 1:23-CV-00305-REP, 2024 WL 1347094, at *11 (D. Idaho Mar. 30, 2024) (quotations omitted). Thus, the ACIP's Hepatitis B recommendations cannot be "agency action[s]." *See* 5 U.S.C. § 551(13).

Additionally, neither the ACIP appointments nor the ACIP's Hepatitis B recommendations fall in any of the categories listed in the "agency action" definition. For example, they were not a "rule" because they were not "an agency statement of general or particular applicability and future effect designed to implement, interpret, or prescribe law or policy or describing the organization, procedure, or practice requirements of an agency," *id.* § 551(4), and did "not purport to, nor [were they] capable of, binding the agency," *Amoco Prod. Co. v. Watson*, 410 F.3d 722, 732 (D.C. Cir. 2005) (Roberts, J.) (quotations omitted), *aff'd sub nom. BP Am. Prod. Co. v. Burton*, 549 U.S. 84 (2006). They also were not an "order" because they were not "a final disposition," formulated through an agency "adjudication" process, that "ha[d] some determinate consequences" for Plaintiffs. 5 U.S.C. § 551(6)–(7); *Int'l Tel. & Tel. Corp., Commc'ns Equip. & Sys. Div. v. Loc. 134, Int'l Bhd. of Elec. Workers*, *AFL-CIO*, 419 U.S. 428, 443 (1975). They did "not order anybody to do anything," and "standing alone, [they bound] no one." *Int'l Tel. & Tel.*, 419 U.S. at 443–44 (quotation omitted).

### B. No "Final Agency Action"

"[T]wo conditions must be satisfied for agency action to be 'final.'" *Bennett v. Spear*, 520 U.S. 154, 177 (1997). "First, the action must mark the consummation of the agency's decisionmaking process—it must not be of a merely tentative or interlocutory nature." *Id.* at 177–78 (cleaned up). Second, "the action must be one by which rights or obligations have been determined, or from which legal consequences will flow." *Id.* at 178 (cleaned up).

The ACIP appointments do not satisfy these requirements. They did not mark the consummation of any decisionmaking process because they were a rolling series of discretionary appointments across nine months (June 2025 to February 2026), with several of the 19 authorized seats still open. ECF No. 96, ¶¶ 71–72 ("Am. Compl."). Indeed, Plaintiffs' challenge to the ongoing process of appointing ACIP members is at odds with the rule that APA claims must challenge "some particular 'agency action' that causes [the plaintiff] harm" and may not assert "programmatic" challenges. *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 891 (1990); *see Norton v. S. Utah Wilderness All.*, 542 U.S. 55, 62–64 (2004). The ACIP appointments also did not determine "rights or obligations" or have "legal consequences." *Bennett*, 520 U.S. at 177–78 (cleaned up).

The ACIP's Hepatitis B recommendations also were not "final agency action." The ACIP advises the CDC Director, who reviews its recommendations and decides whether to adopt them as official recommendations. ACIP Charter, at 1–2. An ACIP recommendation "is considered in effect" only "after it has been adopted by the [CDC] Director." 45 C.F.R. § 147.130(a)(1)(ii). Thus, the ACIP's Hepatitis B recommendations did not mark the "consummation of the agency's decisionmaking process." *Bennett*, 520 U.S. at 177–78 (cleaned up). Likewise, they did not determine "rights or obligations" or generate "legal consequences." *Id.* at 178 (cleaned up); *see* 45 C.F.R. § 147.130(a)(1)(ii); MTD Order 4.

*Dalton v. Specter* addressed similar facts, holding that base closure recommendations were not final agency action because they were "more like a tentative recommendation than a final and binding determination." 511 U.S. 462, 469–71 (1994) (quoting *Franklin v. Massachusetts*, 505 U.S. 788, 798 (1992)). The President, like the CDC Director here, "had absolute discretion to accept or reject" the recommendations. *Bennett*, 520 U.S. at 178.

Plaintiffs argue that "[i]rrespective of whether the [ACIP appointments are] final agency action," they are "[a] preliminary, procedural, or intermediate agency action or ruling" reviewable "on the review of the final agency action," namely, CDC's adoption of the ACIP's Hepatitis B recommendations. Am. Compl. ¶ 452 (quoting 5 U.S.C. § 704). But that CDC action is challenged in Count IV, so even if Plaintiffs were correct, that would at most show that the ACIP appointments could be considered as part of Count IV, not as a standalone Count III.

## II. Plaintiffs Still Fail to Show Standing to Challenge the ACIP Appointments and the ACIP's Hepatitis B Recommendations

### A. Plaintiffs Are Not Entitled to Representation on the ACIP

Plaintiffs allege they were denied "a representational voice on the committee" because "Defendants failed to appoint any ACIP member who represents the perspective of state and local health departments who adhere to the scientific consensus on vaccine safety and efficacy." Am. Compl. ¶ 443. But Plaintiffs identify no law entitling them to an "ACIP member who represents the perspective of" their health departments. *Id.* Although ACIP's Membership Balance Plan (which is not a source of law, *see infra* p.12) provides that a "state and local health department perspective" should be considered when selecting voting members, Am. Compl. ¶ 442, it does not require the Secretary to appoint members who represent that perspective.

### B. Plaintiffs' Reliance on the ACIP's Recommendations Is Self-Inflicted

Plaintiffs allege they previously incorporated the ACIP's recommendations into their laws

and data systems, *id.* ¶¶ 338–41, but post–ACIP appointments, they "could no longer rely on" those recommendations, *id.* ¶ 360, and so must untether their laws from them, *id.* ¶¶ 365–88. But this Court rejected that very theory, explaining that "any alleged harms arising from ACIP's reconstitution are not cognizable or fairly traceable to the defendants" because "the ACIP recommendations at issue do not impact the States by operation of federal law until they are adopted by the CDC," and thus any "allege[d] injuries flowing from [Plaintiffs'] decision to tether laws to ACIP's recommendations, rather than the CDC's adoption of ACIP's recommendations, . . . are 'self-inflicted.'" MTD Order 4–5 (quoting *Pennsylvania v. New Jersey*, 426 U.S. 660, 664 (1976) (per curiam)).[4] This Court further rejected Plaintiffs' claim that the ACIP appointments harm them by "undermin[ing] the basis for the States' 'historical reliance' on the ACIP's scientific expertise." *Id.* at 5.

Plaintiffs note that *California v. Azar* "question[ed] whether the holding of *Pennsylvania* applies outside the specific requirements for the invocation of the Supreme Court's original jurisdiction." 911 F.3d 558, 574 (9th Cir. 2018); *see* Am. Compl. ¶ 390. But *California* did "not decide" that question because "the injury [in *California* was] not 'self-inflicted' within the meaning of *Pennsylvania*." 911 F.3d at 574. The *Pennsylvania* plaintiffs' alleged injury had been self-inflicted because their "laws . . . directly and explicitly tied the states' finances (revenue loss caused by tax credit) to another sovereign's laws (other states' taxes on nonresident income)." *Id.* *California*'s facts were different because the plaintiffs' laws were "not so tethered to the legislative

[4] This Court also rejected Plaintiffs' argument that the ACIP's VFC resolutions have "direct legal impact on their own," Am. Compl. ¶ 355, because "all the vaccines at issue are still covered by the VFC Program," and thus the VFC resolutions "are not at issue in this case," MTD Order 4 n.1 (quotations omitted); *see* Am Compl. ¶ 329. Moreover, the ACIP's VFC resolutions "are separate from the ACIP's vaccine recommendations to CDC and the CDC vaccine schedules." ECF No. 77 at 15; *see, e.g.*, ACIP, June 25–26, 2025 Meeting Summary, at 48–49, https://perma.cc/WEP5-K2LD.

decisions of other sovereigns." *Id.* Here, however, *Pennsylvania* is on point because Plaintiffs freely chose to tether their laws to the ACIP's recommendations.

Contrary to Plaintiffs' argument, it was not "foreseeable" that they would rely on the ACIP's recommendations, Am. Compl. ¶ 456, rather than CDC's. But even if such reliance was foreseeable, any alleged harm is still "self-inflicted." MTD Order 4.[5] Plaintiffs chose to rely on the ACIP's recommendations in the past and can choose whether to rely on them in the future. Likewise, any alleged harm is "self-inflicted" regardless of whether Plaintiffs' reliance on the ACIP's recommendations was reasonable. *See* Am. Compl. ¶¶ 347–59, 456.

Plaintiffs allege they must "either (1) change their laws that incorporated ACIP . . . immunization recommendations or (2) allow those laws to cause harm to public health." Am. Compl. ¶ 362. But Plaintiffs are allegedly in that position because of their self-inflicted choice to rely on the ACIP's recommendations. Moreover, Plaintiffs can only speculate that the ACIP appointments will cause future harm to public health. *See All. for Hippocratic Med.*, 602 U.S. at 381 (standing to "seek[] prospective relief such as an injunction" requires "a sufficient likelihood of *future* injury" (emphasis added)). It is "not sufficiently predictable," for example, which vaccines the ACIP will address or which recommendations the ACIP will make.[6] *Id.* at 383. Plaintiffs cannot show standing based on "speculation about the unfettered choices made by

[5] To be clear, predictability can be relevant to a different part of the standing analysis: "plaintiffs attempting to show causation generally cannot rely on speculation about the unfettered choices made by independent actors not before the courts" in response to the challenged action where "it is not sufficiently predictable" how those independent actors will make those choices. *FDA. v. All. for Hippocratic Med.*, 602 U.S. 367, 383 (2024) (quotations omitted). But when a plaintiff's injury is self-inflicted, it is irrelevant whether the plaintiff's voluntary choices were predictable.

[6] For example, the State of Pennsylvania took actions based on its speculation that the ACIP would "remove necessary vaccines from the VFC Program." Am. Compl. ¶ 374. But that never happened. *See* MTD Order 4 n.1; Am Compl. ¶ 329.

independent actors not before the courts." *Id.* (quotations omitted); *see id.* at 382 (a standing theory that relies on how independent third parties will respond to the challenged action is "substantially more difficult to establish" (cleaned up)).

Finally, Plaintiffs allege they have performed research and provided recommendations and other education to the public. Am. Compl. ¶¶ 365, 369–70, 372–74, 378, 387. But *Alliance for Hippocratic Medicine* held that the plaintiffs could not show standing by "conduct[ing] their own studies" or "engaging in public advocacy and public education" because a plaintiff "that has not suffered a concrete injury caused by a defendant's action cannot spend its way into standing simply by expending money to gather information and advocate against the defendant's action." 602 U.S. at 394; *see Ariz. All. for Retired Ams. v. Mayes*, 186 F.4th 622, 635 (9th Cir. 2026) (en banc) (the "diversion of resources to educate" the public does not "establish an injury-in-fact"). Indeed, Plaintiffs provided guidance and other public education about vaccines before the challenged actions, *see, e.g.*, Am. Compl. ¶¶ 307–09, 315, and there is no indication they ever claimed that was an injury. Furthermore, Plaintiffs "cannot manufacture standing merely by inflicting harm on themselves based on their fears of hypothetical future harm that is not certainly impending," such as by conducting research and education based on speculation about potential ACIP recommendations. *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 416 (2013); *see Pennsylvania*, 426 U.S. at 664.

**C. Plaintiffs' Remaining Theories Fail for Lack of Traceability**

To the extent Plaintiffs untether their laws from *CDC's* recommendations or otherwise take actions in response to them, Am. Compl. ¶¶ 342–44, 372, 376, that is not fairly traceable to the ACIP appointments because CDC's January 2026 vaccine schedule was based on an assessment outside of the ACIP recommendation process. *See* MTD Order 5; Am. Compl. ¶ 127. For the same reason, regardless of whether CDC's vaccine schedules must flow from ACIP recommendations,

the ACIP appointments have nothing to do with whether the January 2026 schedule, and state laws incorporating it, are "effective." *See* Am. Compl. ¶ 393. Similarly, any alleged harms from the ACIP's internal deliberation process and Hepatitis B recommendations, *id.* ¶¶ 371, 396–97, are not traceable to the ACIP appointments because they are both products of "unfettered choices . . . by independent" ACIP members, *All. for Hippocratic Med.*, 602 U.S. at 383 (quotations omitted).

Finally, Plaintiffs' claims about possible future changes to insurance coverage or vaccine access, Am Compl. ¶¶ 376–77, 379, 381, 384–86, 392, are speculative because all the vaccines at issue "will continue to be available for anyone who wants them and will be covered by" insurance. Decision Memo at 2–3, 5; *see All. For Hippocratic Med.*, 602 U.S. at 383.

**D. Plaintiffs Fail to Show Redressability**

Plaintiffs argue that "[i]f the Kennedy Appointments are vacated, [and] Defendants are required to follow the law and their own policies regarding appointments to ACIP, Plaintiff States may not need to further decouple their laws from ACIP and CDC." Am. Compl. ¶ 394. But this Court already rejected that argument: "The States do not adequately allege how vacating the appointments would cause their replacements to make different recommendations, nor how those hypothetical recommendations would cause" CDC to adopt recommendations Plaintiffs support. MTD Order 5. Moreover, "the States' own allegations that the defendants entirely bypassed ACIP to implement the [January 2026] Schedule underscore the uncertain relationship between ACIP's recommendations and the defendants' decisions." *Id.*

Notably, FACA's "fairly balanced" requirement is "judged by the members' employment status and background, not their professed personal opinions." *Pub. Citizen v. Nat'l Advisory Comm. on Microbiological Criteria for Foods,* 886 F.2d 419, 437 (D.C. Cir. 1989) (Edwards, J., concurring in part and dissenting in part). Thus, even if Defendants were ordered to reconstitute the ACIP in accordance with FACA, it is speculative whether the new ACIP would make vaccine

recommendations that Plaintiffs support.

**E. Plaintiffs' Procedural-Injury Theory Fails**

Plaintiffs have not shown a "procedural injury," Am. Compl. ¶¶ 394, 397, because, among other things, they have not plausibly alleged "a procedural requirement has not been met," *Ctr. for Biological Diversity v. Mattis*, 868 F.3d 803, 816 (9th Cir. 2017) (quotations omitted). FACA's "fairly balanced" and "inappropriately influenced" provisions do not require any procedures. *See* 5 U.S.C. § 1004(b)(2)–(3), (c). Likewise, allegedly arbitrary-and-capricious action is a "substantive—not procedural—violation[] of the APA." *W. Coal Traffic League v. Surface Transportation Bd.*, 998 F.3d 945, 954 (D.C. Cir. 2021). Although Plaintiffs allege the ACIP did not use the "GRADE and EtR frameworks" in deciding to make its Hepatitis B recommendations, Am Compl. ¶ 473, no statute, regulation, or other law required the ACIP to follow these internal operating procedures. Indeed, the *ACIP Policies and Procedures*, which discuss the GRADE framework, are "intended to serve as a *reference* for ACIP members (and interested members of the general public) about ACIP's structure and functions." *ACIP Policies and Procedures* at 1 (June 2022), https://www.cdc.gov/acip/downloads/Policies-Procedures-508.pdf. Finally, the "procedures for selecting" ACIP members in the General Services Administration's ("GSA") FACA guidelines and the ACIP's Membership Balance Plan and *Policies and Procedures*, Am. Compl. ¶¶ 444–45, are not legally binding and do not create "procedural rights," *see* 41 C.F.R. § 102-3.5 (May 20, 2024 ed.) (GSA policy guidance that was the genesis for membership balance plans did not "create any right . . . , substantive or procedural, enforceable . . . by any party against the United States"); *id.* § 102-3.60(b)(3)(ii) (May 20, 2024 ed.) (describing outreach information to be included in Membership Balance Plans); *Pub. Citizen v. U.S. Dep't of Just.*, 491 U.S. 440, 463 n.12 (1989) ("GSA's interpretation of FACA's provisions" is not "binding").

Even if Plaintiffs identified a "procedural injury," they still do not show standing. They

have not shown an injury fairly traceable to the ACIP selection process for the same reasons they have not shown an injury fairly traceable to the ACIP appointments. Nor have Plaintiffs shown "that the relief requested—that the agency follow the correct procedures—may influence the agency's ultimate decision of whether to take or refrain from taking a certain action." *Ctr. for Biological Diversity*, 868 F.3d at 818 (quotations omitted). Even if Defendants appointed new ACIP members using the procedures Plaintiffs identify, it would be entirely speculative whether the independent ACIP members would make vaccine recommendations Plaintiffs support and whether CDC would adopt those recommendations. *See* MTD Order 5.

In sum, the Amended Complaint fails to show Plaintiffs' standing to challenge the ACIP appointments or its Hepatitis B recommendations. These claims should be dismissed.

**III. The ACIP Appointments Are Committed to Agency Discretion**

The APA expressly "withdraws jurisdiction to review agency decisions that are 'committed to agency discretion by law.'" *Spencer Enters., Inc. v. United States*, 345 F.3d 683, 688 (9th Cir. 2003) (quoting 5 U.S.C. § 701(a)(2)). This applies when "the statute is drawn so that a court would have no meaningful standard against which to judge the agency's exercise of discretion." *Heckler v. Chaney,* 470 U.S. 821, 830 (1985).

Here, there is no such standard. The statute that authorizes the Secretary to establish advisory committees merely authorizes him to "appoint such advisory councils or committees . . . as he deems desirable . . . for the purpose of advising him" regarding "any of his functions." 42 U.S.C. § 217a(a). It does not prescribe any standards about whom he may appoint or how an advisory committee may operate. FACA, for its part, provides no standard "for judging how" and whether an advisory committee is "fairly balanced in terms of the points of view represented and the functions to be performed" or not "inappropriately influenced by the appointing authority or

by any special interest." 5 U.S.C. § 1004(b)(2)–(3), (c); *Heckler*, 470 U.S. at 830.[7]

*Center for Policy Analysis on Trade and Health (CPATH) v. Office of U.S. Trade Representative*, 540 F.3d 940 (9th Cir. 2008), is dispositive regarding FACA's "fairly balanced" requirement. It held that FACA provides "no meaningful standards to apply" because it "does not . . . articulate what perspectives must be considered when determining if the advisory committee is fairly balanced." *Id.* at 942, 945. It further held that, although the Trade Act of 1974 specified industry views to be represented "insofar as is practicable," that statute "provides no standards to allow us to determine when it is, or when it is not, practicable to appoint a certain interest." *Id.* at 945. Here, 42 U.S.C. § 217a(a) provides even less direction than the Trade Act about how advisory committee members should be appointed. Thus, under *CPATH*, the "fairly balanced" requirement as applied to the ACIP is "committed to agency discretion by law." *Spencer Enters.*, 345 F.3d at 688 (quoting 5 U.S.C. § 701(a)(2)).

In *Physicians Committee for Responsible Medicine v. Vilsack*, No. 16-cv-69-LB, 2016 WL 5930585 (N.D. Cal. Oct. 12, 2016), the court applied *CPATH* to FACA's "inappropriately influenced" provision in the context of an advisory committee established by HHS and the U.S. Department of Agriculture. The court found FACA "'does not define what constitutes' inappropriate influence or explain how courts are to discern such influence." *Id.* at *3 (quoting *CPATH*, 540 F.3d at 944). Turning next to 42 U.S.C. § 217a, this "general statute" does not "speak[] to the issue of how HHS is to compose" advisory committees "or to the question of inappropriate

[7] Although the Ninth Circuit has "look[ed] to regulations, established agency policies, or judicial decisions for a meaningful standard to review," *Pinnacle Armor, Inc. v. United States*, 648 F.3d 708, 719 (9th Cir. 2011) (quotations omitted), that is inconsistent with the Supreme Court's test: whether "*the statute* is drawn so that a court would have no meaningful standard against which to judge the agency's exercise of discretion," *Heckler,* 470 U.S. at 830 (emphasis added). Moreover, "established agency policies" are not a source of "law to apply." *Id.* at 834–35.

influence." *Id.* at *4. Because "the relevant laws offer no 'guidance, guidelines[,] or standards' by which" the court could assess whether there was "inappropriate influence," the issue is "absolutely 'committed' to the agency's judgment." *Id.* at *8 (quoting *CPATH*, 540 F.3d at 944); *see also Colo. Env't Coal. v. Wenker*, 353 F.3d 1221, 1231–32 (10th Cir. 2004).

**IV. Plaintiffs Do Not Plausibly Allege Inappropriate Influence**

To state an APA claim based on FACA's "inappropriately influenced" provision, Plaintiffs must plausibly allege that the ACIP's recommendations are "inappropriately influenced by the appointing authority or by any special interest." 5 U.S.C. § 1004(b)(3), (c). But Plaintiffs make only "conclusory" assertions of inappropriate influence without "factual content" to substantiate them. *Iqbal*, 556 U.S. at 678–79. For example, they allege no facts that would render it plausible that the ACIP's "recommendations [are] no longer reliably independent" or "are now tainted by Secretary Kennedy's inappropriate influence." Am. Compl. ¶ 87. Likewise, Plaintiffs provide no factual support for their assertion that "Defendants can exert inappropriate influence" over the ACIP members. *Id.* ¶ 80. Moreover, the mere *ability* to exert inappropriate influence does not violate FACA. There are also no factual allegations that would make it more than "speculative" that Defendants' "purpose" in appointing the ACIP members was to "exert[] inappropriate influence over ACIP." *Id.* ¶ 448; *Twombly*, 550 U.S. at 555. Of course, that the ACIP members' views on vaccines allegedly "align with [Secretary] Kennedy's views," Am Compl. ¶ 80, does not show the Secretary is influencing their decisions, let alone exerting inappropriate influence. Because Plaintiffs have not plausibly alleged inappropriate influence, Counts III and IV should be dismissed to the extent they rely on this theory.

## CONCLUSION

For these reasons, the Court should dismiss the ACIP claims in the Amended Complaint for lack of subject-matter jurisdiction and failure to state a claim.

October 22, 2026

Respectfully submitted,

BRETT A. SHUMATE
Assistant Attorney General

ERIC B. BECKENHAUER
Assistant Director

JAMES W. HARLOW
Senior Trial Counsel

*/s/ Isaac C. Belfer*
ISAAC C. BELFER (D.C. Bar No. 1014909)
Trial Attorney
Federal Programs Branch
Civil Division
U.S. Department of Justice
1100 L Street, NW
Washington, DC 20005
(202) 305-7134
(202) 514-8742 (fax)
Isaac.C.Belfer@usdoj.gov

*Counsel for Defendants Robert F. Kennedy, Jr., in his official capacity as Secretary of HHS; HHS; Erica Schwartz, in her official capacity as Director of CDC; and CDC*

## CERTIFICATE OF SERVICE

I hereby certify that this document, filed through the CM/ECF system, will be sent via electronic mail to the registered participants as identified on the Notice of Electronic Filing.

October 22, 2026

*/s/ Isaac C. Belfer*
Isaac C. Belfer