**KRISTIN K. MAYES**
**Attorney General**
(Firm State Bar No. 14000)
Joshua D. Bendor (AZ Bar No. 031908)
Clinten N. Garrett (AZ Bar No. 022457)
Syreeta A. Tyrell (AZ Bar No. 034273)
Alexa G. Salas (AZ Bar No. 039722)
Office of the Arizona Attorney General
2005 N. Central Avenue
Phoenix, AZ 85004-1592
(602) 542-3333
Joshua.Bendor@azag.gov
Clinten.Garrett@azag.gov
Syreeta.Tyrell@azag.gov
Alexa.Salas@azag.gov
ACL@azag.gov
*Attorneys for Plaintiff State of Arizona*

*Additional Counsel Listed on Signature Page*

**ROB BONTA**
**Attorney General of California**
Neli Palma
Senior Assistant Attorney General
Kathleen Boergers (CA Bar No. 213530)
Nimrod Pitsker Elias (CA Bar No. 251634)
Supervising Deputy Attorneys General
Katherine Milton (CA Bar No. 284803)
Marnie G. Ganotis (CA Bar No. 206178)
Deputy Attorneys General
California Department of Justice
455 Golden Gate Avenue, Suite 11000
San Francisco, CA 94102-7020
(415) 510-4400
Kathleen.Boergers@doj.ca.gov
Nimrod.Elias@doj.ca.gov
Katherine.Milton@doj.ca.gov
Marnie.Ganotis@doj.ca.gov
*Attorneys for Plaintiff State of California*

**UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| STATE OF ARIZONA, *et al.*,<br><br>Plaintiffs,<br><br>v.<br><br>ROBERT F. KENNEDY, JR., *et al.*,<br><br>Defendants. | Case No. 3:26-cv-01609-VC<br><br>**Plaintiffs' Opposition to Partial Motion to Dismiss First Amended Complaint**<br><br>Hearing Date: December 15, 2026<br>Time: 1:00 p.m.<br>Judge: Hon. Vince Chhabria<br>Place: San Francisco Courthouse<br>Courtroom 3, 17th Floor |

# Table of Contents


TABLE OF AUTHORITIES ........ III

INTRODUCTION ........ 1

ARGUMENT ........ 1

I. Defendants' nonreviewability arguments are unavailing. ........ 1

A. Secretary Kennedy's reconstitution of ACIP was final agency action. ........ 1

1. The reconstitution was the consummation of Defendants' decisionmaking. ........ 2

2. The reconstitution has legal consequences. ........ 3

B. The reconstitution would be reviewable under the APA even if it were deemed not to be a final agency action. ........ 4

C. The narrow "committed to agency discretion" exception is inapplicable. ........ 5

II. Plaintiffs have standing to bring the ACIP claims. ........ 7

A. Plaintiffs' injuries are not self-inflicted. ........ 7

1. Defendants' unlawful reconstitution of ACIP injures States that rely on ACIP *or* CDC (or both). ........ 8

2. The FAC demonstrates that Plaintiffs' reliance on ACIP was reasonable and foreseeable within the federal legal regime. ........ 8

3. A federal regulation does not deprive Plaintiffs of standing. ........ 10

4. ACIP-related injuries are not self-inflicted under *Pennsylvania v. New Jersey*. ........ 11

B. The harms are redressable. ........ 13

CONCLUSION ........ 15

**Table of Authorities**

**Page(s)**

**Cases**

*Accrediting Council for Indep. Coll. & Schs. v. DeVos*,
303 F. Supp. 3d 77 (D.D.C. 2018) ........ 5

*American Academyof Pediatrics v. Kennedy*,
823 F. Supp. 3d 141 (D. Mass. 2026) ........ 8

*Appalachian Power Co. v. E.P.A.*,
208 F.3d 1015 (D.C. Cir. 2000) ........ 14

*Bennett v. Spear*,
520 U.S. 154 (1997) ........ 2

*Biden v. Nebraska*,
600 U.S. 477 (2023) ........ 11

*California v. Azar*,
911 F.3d 558 (9th Cir. 2018) ........ 12

*California v. Bureau of Alcohol, Tobacco, Firearms and Explosives*,
20-CV-06761-EMC, 2023 WL 1873087 (N.D. Cal. Feb. 9, 2023) ........ 13

*Center for Policy Analysis on Trade and Health v. Office of U.S. Trade Representative*,
540 F.3d 940 (9th Cir. 2008) ........ 5, 6

*Church of Scientology of California v. United States*,
920 F.2d 1481 (9th Cir. 1990) ........ 14

*Colo. Env't Coal. v. Wenker*,
353 F.3d 1221 (10th Cir. 2004) ........ 6

*Ctr. for Biological Diversity v. Haaland*,
58 F.4th 412 (9th Cir. 2023) ........ 4

*Ctr. for Biological Diversity v. Mattis*,
868 F.3d 803 (9th Cir. 2017) ........ 13

*Day v. Henry*,
152 F.4th 961 (9th Cir. 2025) ........ 15

*FEC v. Cruz*,
596 U.S. 289 (2022) ........ 13

*F.T.C. v. Standard Oil Co. of California*,
449 U.S. 232 (1980) ..... 1, 4

*Heckler v. Chaney*,
470 U.S. 821 (1985) ..... 5

*Ixchop-Perez v. Barr*,
821 F. App'x 690 (9th Cir. 2020) ..... 14

*NAACP Legal Def. & Educ. Fund, Inc. v. Barr*,
496 F. Supp. 3d 116 (D.D.C. 2020) ..... 6, 15

*New York v. Kennedy*,
155 F.4th 67 (1st Cir. 2025) ..... 2

*New York v. Kennedy*,
789 F. Supp. 3d 174 (D.R.I. 2025) ..... 3, 4

*New York v. Trump*,
133 F.4th 51 (1st Cir. 2025) ..... 2, 3

*Oregon Nat. Desert Ass'n v. U.S. Forest Serv.*,
465 F.3d 977 (9th Cir. 2006) ..... 2

*Oregon v. Kennedy*,
831 F. Supp. 3d 1048 (D. Or. 2026) ..... 3

*Pennsylvania v. New Jersey*,
426 U.S. 660 (1976) ..... 11, 12

*Perez Perez v. Wolf*,
943 F.3d 853 (9th Cir. 2019) ..... 5

*Physicians Committee for Responsible Medicine v. Vilsack*,
No. 16-CV-00069-LB, 2016 WL 5930585 (N.D. Cal. Oct. 12, 2016) ..... 6, 7

*Presidio Golf Club v. Nat'l Park Serv.*,
155 F.3d 1153 (9th Cir. 1998) ..... 11

*Sierra Club v. Trump*,
929 F.3d 670 (9th Cir. 2019) ..... 4

*St. Pierre v. Dyer*,
208 F.3d 394 (2d Cir. 2000) ..... 11

*Student Loan Mktg. Ass'n v. Riley*,
104 F.3d 397 (D.C. Cir. 1997) ..... 3

*Texas v. U.S.*,
809 F.3d 134 (5th Cir. 2015) ... 13

*Trout Unlimited v. Pirzadeh*,
1 F.4th 738 (9th Cir. 2021) ... 5

*Washington v. Trump*,
145 F.4th 1013 (9th Cir. 2025) ... 11, 12

*Waterkeeper All. v. EPA*,
140 F.4th 1193 (9th Cir. 2025) ... 3

*Whitman v. Am. Trucking Associations*,
531 U.S. 457 (2001) ... 2

*Yaman v. U.S. Dep't of State*,
634 F.3d 610 (D.C. Cir. 2011) ... 4

**Statutes**

5 U.S.C. § 551(13) ... 1

5 U.S.C. § 704 ... 4

5 U.S.C. § 1004(b)(3), (c) ... 14

5 U.S.C. § 1008(c)(1) ... 14

18 U.S.C. § 202 ... 4

18 U.S.C. § 205 ... 4

42 U.S.C. § 243(a) ... 9

**Regulations**

5 C.F.R. § 2634.904 ... 4

41 C.F.R. § 102-3.75(k) ... 14

41 C.F.R. § 102-3.60(b)(3)(ii) (May 20, 2024 ed.) ... 14

45 C.F.R. § 147.130(a)(1) ... 10

45 C.F.R. § 147.130(a)(1)(ii) ... 10

## Introduction

The Court's September 8, 2026, Order recognized that States "act against the backdrop of a baseline federal legal regime" to which the CDC is central. The First Amended Complaint ("FAC") establishes that ACIP's recommendations are an indispensable part of the federal regime on which States must rely. Thus, when Defendants populated ACIP with unqualified appointees and ordained its conclusions, they injured not just those States whose laws rely directly on ACIP, but all States that rely on the CDC to execute their laws or for assistance with their core public health functions. Because Defendants' standing, finality, and other arguments lack merit, the Court should deny Defendants' motion to dismiss. Even if the Court were to determine that the ACIP reconstitution is not final action, Defendants have not disputed that it is "intermediate" action challengeable under 5 U.S.C. § 704 through the hepatitis B claim.

## Argument

### I. Defendants' nonreviewability arguments are unavailing.

#### A. Secretary Kennedy's reconstitution of ACIP was final agency action.

The Administrative Procedure Act ("APA") defines "agency action" to mean "the whole or a part of an agency rule, order, license, sanction, relief, or the equivalent or denial thereof, or failure to act." 5 U.S.C. § 551(13). Defendants argue (at 5) that the ACIP appointments do not "fall in any of the categories listed in the 'agency action' definition," but that is wrong. "The term 'agency action' brings together previously defined terms … to assure the *complete coverage of every form of agency power, proceeding, action, or inaction*." *F.T.C. v. Standard Oil Co. of California*, 449 U.S. 232, 238 n.7 (1980) (citing S.Doc. No. 248, 79th Cong., 2d Sess., 255 (1946)) (emphasis added). Under § 551(6), an order is "the whole or a part of a final disposition … of an agency in a matter other than rule making." Secretary Kennedy declared that he was reconstituting ACIP in the media and on the social media platform X, and immediately did so. FAC ¶¶ 70–71; ¶ 68

(ordering that ACIP's members be replaced with individuals he had selected). This meets the definition of an agency action, or at a minimum, "the equivalent … thereof." *See Whitman v. Am. Trucking Associations*, 531 U.S. 457, 478 (2001) ("[T]he word 'action' … is meant to cover comprehensively every manner in which an agency may exercise its power.").

An agency action is "final" if it (1) "mark[s] the consummation of the agency's decisionmaking process," and (2) is "one by which rights or obligations have been determined, or from which legal consequences will flow." *Bennett v. Spear*, 520 U.S. 154, 177–78 (1997) (cleaned up). Both prongs are satisfied here.

**1. The reconstitution was the consummation of Defendants' decisionmaking.**

Defendants argue (at 6) that the ACIP reconstitution "did not mark the consummation of any decisionmaking process because" it was "a rolling series of discretionary appointments," with "seats still open." In effect, Defendants urge an APA loophole that would render actions unreviewable if they are sufficiently (and intentionally) piecemeal and ad hoc. But finality "must be interpreted in a pragmatic and flexible manner." *Oregon Nat. Desert Ass'n v. U.S. Forest Serv.*, 465 F.3d 977, 982 (9th Cir. 2006) (cleaned up). Thus, courts across the country have consistently rejected non-finality arguments similar to those Defendants make here. Perhaps most similarly, in a case about a reduction in force (RIF) and dismantling of subagencies at HHS, the government argued that its statement announcing the changes was not final agency action. *New York v. Kennedy*, 155 F.4th 67, 76 (1st Cir. 2025). The First Circuit rejected this argument because the government could not "explain how it was not a 'consummation' of the agency's decisionmaking process and did not have 'legal consequences,' given that it was followed, just days later, by the Department's dismantling of sub-agencies and a RIF impacting 10,000 employees." *Id.*; *see also, e.g.*, *New York v. Trump,* 133 F.4th 51, 68–69 (1st Cir. 2025) (rejecting nonfinality argument in

connection with federal funding freezes because the "freezes were categorical in nature"); *Oregon v. Kennedy,* 831 F. Supp. 3d 1048, 1068 (D. Or. 2026) (rejecting argument that Secretary Kennedy's Declaration on gender-affirming-care policy "reflect[ed] only the Secretary's non-binding opinion" and finding that his "press statement … confirm[ed]" finality) (cleaned up).

Just as these other actions are final action even when implemented in a piecemeal or ad hoc fashion, ACIP's reconstitution—by Secretary Kennedy's own description—was a single, consummated final action. FAC ¶ 70; *see also* Robert F. Kennedy, Jr., *HHS Moves to Restore Public Trust in Vaccines*, WALL ST. J., June 9, 2025 ("totally reconstitut[ed] ACIP" in "[a] clean sweep"). This was a definitive action on which "the Secretary had made up his mind." *Student Loan Mktg. Ass'n v. Riley*, 104 F.3d 397, 405 (D.C. Cir. 1997) (secretary's "unequivocal[]" position "confirmed that the Department's view was definitive"). And Secretary Kennedy cemented the action by swiftly implementing it. *See, e.g.*, FAC ¶¶ 70–72. In arguing otherwise, "Defendants ask the Court to ignore the dispositive impact of [Secretary] Kennedy['s] … plain language." *Oregon*, 831 F. Supp. 3d at 1069.

It is also immaterial whether appointing ACIP members is an "ongoing process," Mot. at 6. *New York v. Kennedy*, 789 F. Supp. 3d 174, 203 (D.R.I. 2025) ("mere fact that additional cuts may also be implemented does not prevent … review[] [of] the actions already taken"); *see also, e.g.*, *Waterkeeper All. v. EPA*, 140 F.4th 1193, 1207 (9th Cir. 2025) (action does not lack finality because the agency may "need to do something similar again in the future"). And in any event, it is immaterial whether reconstitution is construed as a single final action or as a series of discrete final actions. *See New York*, 133 F.4th at 68 (no "supporting authority for the proposition that the APA bars a plaintiff from challenging a number of discrete final agency actions all at once").

**2. The reconstitution has legal consequences.**

As in *New York v. Kennedy*, where Secretary Kennedy dismantled HHS functionality,

ACIP's reconstitution had "clear legal consequences," including that Plaintiffs "are unable to access … the expertise and guidance on which they have long relied." 789 F. Supp. 3d at 203. Indeed, when an agency "effectively discontinue[s]" an important public health resource, the consequence is "self-evident." *Id.*

Beyond the legal consequence for States, the reconstitution determined the rights and obligations of the discharged and newly appointed members. *See Ctr. for Biological Diversity v. Haaland*, 58 F.4th 412, 419 (9th Cir. 2023) (considering whether action "alter[ed] the rights of the [plaintiff] or any other third party"). ACIP members are special government employees, *see* 18 U.S.C. § 202, who have the power to vote on VFC determinations and ACIP recommendations and carry out ACIP's other critical functions. They are also subject to financial disclosure requirements and conflict-of-interest provisions. 18 U.S.C. § 205; 5 C.F.R. § 2634.904. Their status as ACIP members has obvious legal consequence. *See Sierra Club v. Trump*, 929 F.3d 670, 698 n.23 (9th Cir. 2019) (analyzing "whether the agency action imposes obligations on the agency").

**B. The reconstitution would be reviewable under the APA even if it were deemed not to be a final agency action.**

Even if the Court views the reconstitution as nonfinal, "[a] preliminary, procedural, or intermediate agency action or ruling not directly reviewable is subject to review on the review of the final agency action." 5 U.S.C. § 704. Thus, when there is final action on review, the court "need not decide" whether all of the challenged actions leading up to it are final. *Yaman v. U.S. Dep't of State*, 634 F.3d 610, 613 (D.C. Cir. 2011) (finality question was "moot" where separate challenges to final action and arguably nonfinal action were consolidated).

Here, there is no dispute that the CDC's approval of the reconstituted ACIP's hepatitis B birth dose recommendation is reviewable final agency action. Accordingly, the underlying reconstitution of ACIP is also reviewable under § 704. *See, e.g.*, *F.T.C.*, 449 U.S. at 245 (holding

that the "alleged unlawfulness in the issuance of" an administrative complaint would be reviewable upon issuance of a final cease-and-desist order under § 704); *Accrediting Council for Indep. Coll. & Schs. v. DeVos*, 303 F. Supp. 3d 77, 116 (D.D.C. 2018) (rejecting "defendants' argument that intermediate agency action is never reviewable, as that position is explicitly contradicted by the APA"). Indeed, Defendants do not dispute that, in reviewing the hepatitis B decision, the court can consider whether the ACIP that made that recommendation was unlawfully constituted. Mot. at 7 (arguing that Plaintiffs have "at most show[n] that the ACIP appointments could be considered as part of Count IV [the hepatitis B claim]"); *see also* Defs-Appellants' Mot. to Calendar at 8–9, *Am. Acad. of Pediatrics v. Kennedy*, No. 26-1503 (1st Cir.) (agreeing that "FACA's fair-balance requirement can be enforced through APA review of downstream final agency action").

**C. The narrow "committed to agency discretion" exception is inapplicable.**

The "committed to agency discretion" exception to judicial review "is a very narrow exception." *Heckler v. Chaney*, 470 U.S. 821, 830 (1985) (cleaned up). As Defendants acknowledge (at 13), it applies only where there are "*no* judicially manageable standards … available for judging how and when an agency should exercise its discretion." *Id.*; *Perez Perez v. Wolf*, 943 F.3d 853, 861 (9th Cir. 2019) (same). "Even where statutory language grants an agency unfettered discretion, its decision may nonetheless be reviewed if regulations or agency practice provide a meaningful standard by which this court may review its exercise of discretion." *Trout Unlimited v. Pirzadeh*, 1 F.4th 738, 751–52 (9th Cir. 2021) (cleaned up).

Defendants' reliance on *Center for Policy Analysis on Trade and Health (CPATH) v. Office of U.S. Trade Representative*, 540 F.3d 940 (9th Cir. 2008), is misplaced. In *CPATH*, the Ninth Circuit held that FACA's "fairly balanced" membership requirement and the Trade Act of 1974—in conjunction—did not provide a meaningful standard for review. *Id.* at 947. This was a "narrow" decision, and the Court made clear that it was "not suggest[ing] that FACA's 'fairly balanced'

requirement is non-reviewable in every circumstance," but rather, as applied to the Trade Act. *Id.* Indeed, the Court recognized that other Circuits had "addressed the 'fairly balanced' requirement in the context of other laws and … found the 'fairly balanced' requirement specific enough to allow for judicial review." *Id.* at 945–46 (no "conflict with decisions from our sister circuits"); *see also, e.g., NAACP Legal Def. & Educ. Fund, Inc. v. Barr*, 496 F. Supp. 3d 116, 132–36 (D.D.C. 2020) (holding "fair balance" requirement justiciable under FACA and its implementing regulations); *Colo. Env't Coal. v. Wenker*, 353 F.3d 1221, 1233–34 (10th Cir. 2004) (same).

Here, in contrast to the situation in *CPATH*, there are extensive judicially manageable standards for the Court to apply through the combination of FACA's "fairly balanced" requirement, FACA's prohibition on inappropriate influence (which was not at issue in *CPATH*), controlling regulations, ACIP's Charter, Membership Balance Plan ("MBP"), and Policies and Procedures, and historical practice unbroken until 2025. *See, e.g.*, *Charter* at 1 (ACIP must advise the CDC on the "effective control of vaccine-preventable disease"); *Policies & Procedures* at 16–18, *MBP* at 3 (new appointments require Federal Register notice, broad solicitation of nominations or applications, consultation with ACIP's Steering Committee, and other vetting); *Charter* at 4, *MBP* at 2 (requiring members to have specific expertise and specifying "other balance factors"); *see also* FAC ¶¶ 431–44. And unlike in *CPATH* where the "perspectives [that] must be considered" for fair balance were central, 540 F.3d at 945, the core of this case is that Defendants appointed unqualified members in violation of their own policies and procedures, and subjected the members to inappropriate influence.

Relying on *Physicians Committee for Responsible Medicine v. Vilsack*, No. 16-CV-00069-LB, 2016 WL 5930585 (N.D. Cal. Oct. 12, 2016), Defendants argue (at 14–15) that FACA's "inappropriately influenced" standard is also outside judicial purview. But *Physicians Committee*

is not controlling and merits no weight. The magistrate in that case extended *CPATH's* holding to FACA's "inappropriately influenced" prong based on the view that "[t]he control of a Ninth Circuit decision is enough to dispose of this case." *Id.* at *5, *7 (*CPATH* "compels this conclusion"). But the Ninth Circuit held in *CPATH* that the decision did not control other "fairly balanced" cases, and *CPATH* said nothing about FACA's separate "inappropriately influenced" provision.

Even if the "inappropriately influenced" standard could create a challenge in edge cases, this is not such a case. According to contemporaneous documents, "Bobby [Secretary Kennedy] … asked for the following changes to be made for the next ACIP meeting: (1) Replace the members with the ten identified[,] (2) Add votes on 'joint decision making' for Hep B." FAC ¶ 68; ¶ 69 (similar). Contrary to Defendants' assertion (at 15) that Plaintiffs make only "'conclusory' assertions of inappropriate influence," this is an explicit order that ACIP be reconstituted without requisite process and that it reach a predetermined conclusion—and ACIP then complied. *Id.* ¶¶ 92–94; ¶ 96 ("puppets on a string").

## II. Plaintiffs have standing to bring the ACIP claims.

### A. Plaintiffs' injuries are not self-inflicted.

The Court recognized that "States cannot promulgate vaccine-related laws and regulations on a blank slate; they must act against the backdrop of a baseline federal legal regime." Order at 4. The Court, however, distinguished between States' reliance on the CDC's adoption of ACIP's recommendations and reliance on the recommendations themselves—holding that injuries flowing from the former confer standing, while injuries based on the latter were "self-inflicted." *Id.* Plaintiffs have since pleaded facts and law showing why it was reasonable for many of them to rely on ACIP itself, and therefore why their injuries due to Defendants' unlawful changes to ACIP are not self-inflicted.

### 1. Defendants' unlawful reconstitution of ACIP injures States that rely on ACIP *or* CDC (or both).

As the Court recognizes, the CDC has statutory responsibility for "assist[ing] States and their political subdivisions in the prevention and suppression of communicable diseases." Order at 4. And ACIP's core function is, of course, to advise the CDC Director on the "use of vaccines and related agents for effective control of vaccine preventable diseases in the civilian population of the United States." *Charter* at 1.

The gravamen of the reconstitution claim is that Defendants unlawfully reconstituted ACIP to reach predetermined conclusions, divorced from science, which harms the States and public health. *E.g.*, FAC ¶¶ 361, 462. As Judge Murphy recognized in *American Academy of Pediatrics v. Kennedy*, "Congress has spoken directly to the CDC's immunization schedules and has required ACIP's specific involvement." 823 F. Supp. 3d 141, 159 (D. Mass. 2026) (surveying ACIP's incorporation into federal law). If ACIP is unlawfully constituted in a manner that renders its immunization recommendations unreliable, then CDC's approval of those decisions is tainted, both legally and scientifically. ACIP's reconstitution is therefore a proximate cause of harm within the "baseline federal legal regime" that the Court identified, whether a State relies on ACIP, CDC, or both. FAC ¶ 393. And Secretary Kennedy's demand that the CDC Director "commit in advance to approving every [ACIP] recommendation," FAC ¶ 90, confirms that the harm flows at least as much from ACIP's action as from the CDC's pro forma ratification.

### 2. The FAC demonstrates that Plaintiffs' reliance on ACIP was reasonable and foreseeable within the federal legal regime.

As alleged in the FAC, Plaintiffs have also been injured by their reliance on ACIP itself, and that injury is ongoing and not self-inflicted. After all, States' decisions to incorporate ACIP recommendations into "nearly 600 statutes and regulations," FAC ¶ 257, as well as their longstanding reliance on ACIP's expertise generally, were not arbitrary or based on a

misapprehension about the legal or public-health force of ACIP's recommendations.

To start, as the Court recognized, the Vaccines for Children (VFC) program expressly relies on ACIP recommendations, while directing States to "establish a pediatric vaccine distribution program" consistent with the requirements of the VFC statute. FAC ¶ 355. Given this mandate, it made sense for the States to incorporate ACIP recommendations into their laws.

Other federal statutes, as well as historical and practical factors, have reinforced States' reliance on ACIP for decades. Congress has "embedded references and tied immunization coverage and cost-sharing benefits to ACIP and its recommendations across various statutes." FAC ¶ 358. ACIP's recommendations have also historically "been succinct, clear, and accessible," *id.* ¶ 350, ensuring "the incorporation of concise, actionable recommendations promulgated on a date certain," *id.* ¶ 351. And since ACIP's inception, "the CDC Director has only deviated from ACIP's recommendations two or three times." FAC ¶ 346. Thus, for States operating against the backdrop of a federal legal regime buttressed by 42 U.S.C. § 243(a), "CDC" and "ACIP" have always been—and remain—"largely synonymous." *Id.* ¶ 347.

Prior to ACIP's reconstitution, many States had therefore "spent decades designing their legal and public health infrastructure governing immunization in reliance on ACIP and CDC's independent and evidence-based recommendations." FAC ¶ 338. ACIP's recommendations are embedded in school entry immunization requirements, insurance coverage requirements, and other laws. *See* FAC ¶¶ 339–40. Some States also rely on ACIP's recommendations in their data systems to track vaccination rates and inform forecasting models. FAC ¶ 267 (New Mexico); *id.* ¶ 341 (Wisconsin). These decisions were reasonable. As the FAC shows, the reconstitution—separate from the CDC's other actions—was consequential for States. For example, New York recognized that while ACIP had "long agreed with the scientific and medical consensus that immunizations

are critical to protecting public health and safety," that was no longer the case. New York responded by enacting two laws to untether its vaccine recommendations and reimbursements from ACIP's recommendations. FAC ¶¶ 366–68 ("[T]he current federal administration … has replaced many of the medical experts on [ACIP] with immunization skeptics that appear unwilling to maintain evidence-based immunization recommendations that prioritize public health."). Numerous other States responded similarly. *See, e.g.*, *id.* ¶ 375 (New Jersey amended its law because Secretary Kennedy had "'replaced experts on federal health advisory committees with unqualified individuals who share his dangerous and unscientific views,' including those on ACIP"); *id.* ¶¶ 369–74, 376–91.

When Defendants replaced the ACIP members with unqualified members, in a manner contrary to law and longstanding federal policy regarding qualifications, process, and inappropriate influence, Plaintiffs had to either (1) change their laws that incorporated ACIP or CDC recommendations, or (2) allow those laws to threaten harm to public health. *Id.* ¶ 362. Both groups of Plaintiffs lost the overall ability to rely on ACIP's critical expertise.

**3. A federal regulation does not deprive Plaintiffs of standing.**

The Court held that Plaintiffs' ACIP-related injuries were self-inflicted because "the ACIP recommendations at issue do not impact the States by operation of federal law until they are adopted by the CDC." Order at 4. The regulation that the Court cited, 45 C.F.R. § 147.130(a)(1)(ii), provides that "a recommendation from [ACIP] is considered in effect after it has been adopted by the Director of the [CDC]." This regulation does not control Plaintiffs' standing for two reasons.

As a threshold matter, § 147.130 does not purport to determine the legal force of ACIP recommendations wholesale. FAC ¶¶ 459–60. Rather, it specifically governs the circumstances under which group health plans and insurers must cover preventative services without cost sharing. 45 C.F.R. § 147.130(a)(1). It does not govern the legal effect of ACIP decisions on VFC coverage,

for example. States understandably incorporated ACIP recommendations into their laws and public health practices, notwithstanding this regulation. FAC ¶¶ 345–59; 455–61.

More generally, State standing does not hinge on whether the "ACIP recommendations … impact the States by operation of federal law." *See* Order at 4. Rather, it turns on the bedrock questions of reasonableness and foreseeability. *See, e.g.*, *Presidio Golf Club v. Nat'l Park Serv.*, 155 F.3d 1153, 1163 (9th Cir. 1998) ("Agencies must consider … those indirect effects that are 'reasonably foreseeable,'" and "an adequate string of causation … confer[s] standing"); *St. Pierre v. Dyer*, 208 F.3d 394, 402 (2d Cir. 2000) ("Standing is defeated only if it is concluded that the injury is so completely due to the plaintiff's own fault as to break the causal chain.") (cleaned up). In *Biden v. Nebraska*, for example, no federal law compelled Missouri to establish an instrumentality that serviced student loans. 600 U.S. 477 (2023). Yet Missouri chose to do so "to further a public purpose," and thereby established that it would be injured if loans were discharged en masse. *Id.* at 489–91; *see also Washington v. Trump*, 145 F.4th 1013, 1024 (9th Cir. 2025) (recognizing that the Supreme Court found standing in *Biden* "even though [Missouri's] financial injury stemmed from its *choice* to service federal loans") (emphasis added). Likewise here, Plaintiffs' longstanding reliance on ACIP to meet their public health obligations was reasonable and foreseeable, even if federal law did not compel that reliance. FAC ¶¶ 345–39; 455–61.

#### 4. ACIP-related injuries are not self-inflicted under *Pennsylvania v. New Jersey.*

Defendants argue that a plaintiff's injury is "self-inflicted" under *Pennsylvania v. New Jersey*, 426 U.S. 660 (1976), if it chooses to do something it could have theoretically not done—even if the choice was both "reasonable" and "foreseeable." Mot. at 9 ("Plaintiffs freely chose to tether their laws to the ACIP's recommendations."). But that conception of self-inflicted injury is fundamentally wrong. A business injured by an unlawful tariff does not lack standing because it

could have chosen to import different goods. Indeed, the Ninth Circuit has repeatedly rejected "self-inflicted" arguments against standing, noting that "Courts regularly entertain actions brought by states and municipalities that face economic injury, even though those governmental entities theoretically could avoid the injury by" having different laws. *California v. Azar*, 911 F.3d 558, 574 (9th Cir. 2018). Thus, the Ninth Circuit held in *Washington* that plaintiff states' choice to provide social services to children potentially rendered ineligible for services under an executive order redefining birthright citizenship did not make their economic injuries "self-inflicted." 145 F.4th at 1023–24. As the court explained, it was "not a voluntary choice by the States for the federal government to stop paying for these services, or to assume the costs that follow." *Id.* The same logic applies here.

*Pennsylvania*'s limited application may also be explained by the fact that it concerned the Supreme Court's original jurisdiction, not Article III standing, leading the Ninth Circuit to "question whether the holding of *Pennsylvania* applies outside the specific requirements for the invocation of the Supreme Court's original jurisdiction." *California*, 911 F.3d at 574. And the facts in *Pennsylvania* illustrate why Defendants' reliance on it is misplaced. There, the defendant states levied taxes on income earned by nonresidents who lived in the plaintiff states—which caused no injury to the plaintiffs. 426 U.S. at 664. The plaintiff states then offered offsetting tax credits to those residents and claimed that the other states had injured them. *Id.*

This stands in marked contrast to this case, where Plaintiffs crafted their laws in reasonable reliance on federal policy to protect the public health—a core state function with obligations imposed by statute on both state and federal governments—not to confer a gratuitous benefit on their residents for which the other sovereign should bear no responsibility. Plaintiffs' injuries are thus akin to those in *California v. Bureau of Alcohol, Tobacco, Firearms and Explosives*, where

this Court found that California "suffer[ed] an affirmative harm imposed upon it by another sovereign's failure"—there, the federal government's failure to regulate ghost guns—leaving a gap for the state to address through its own legislation to avoid further injury. No. 20-CV-06761-EMC, 2023 WL 1873087, at *8–*11 (N.D. Cal. Feb. 9, 2023) (rejecting argument that plaintiff's injuries were self-inflicted under *Pennsylvania*); *see also Texas v. U.S.*, 809 F.3d 134, 156–59 (5th Cir. 2015) (holding that Texas's financial injury was not "self-inflicted" under *Pennsylvania* because it was based on a "significant change" in federal policy that left the state with "no similar option" to accomplish its legitimate policy goals).

And as for traceability, the Supreme Court has "never recognized an exception to … traceability … for injuries that a party purposely incurs." *FEC v. Cruz*, 596 U.S. 289, 296 (2022).

**B. The harms are redressable.**

"Plaintiffs alleging procedural injury can often establish redress[a]bility with little difficulty, because they need to show only that the relief requested—that the agency follow the correct procedures—may influence the agency's ultimate decision of whether to take or refrain from taking a certain action." *Ctr. for Biological Diversity v. Mattis*, 868 F.3d 803, 818 (9th Cir. 2017) (cleaned up). Here, Defendants' failure to follow their own procedures regarding appointments to ACIP may have influenced both their decision over who to appoint to ACIP and ACIP's resulting decision to get rid of the recommendation for the universal birth dose for the hepatitis B vaccine. If the court ultimately declares Defendants' reconstitution of ACIP unlawful and sets it aside, that may influence the ultimate composition of ACIP and ACIP's resulting substantive decisions.

Defendants cannot dispute this basic logic. Instead, they argue (at 12) that "Plaintiffs have not shown a 'procedural injury.'" In a single sentence, they contend that ACIP's governing documents are not legally binding and do not create procedural rights. This is incorrect.

ACIP's Charter, Membership Balance Plan, and Policies and Procedures establish detailed procedures for appointing ACIP's members and for how members conduct themselves. *See* FAC ¶¶ 431–44. The adoption of these procedural controls is not discretionary. Controlling law *mandates* that legislation establishing an advisory committee "contain appropriate provisions to assure that the advice and recommendations of the advisory committee will not be inappropriately influenced." 5 U.S.C. § 1004(b)(3), (c). Advisory committees *must* maintain a charter that specifies the "expertise or experience required" of its members. 5 U.S.C. § 1008(c)(1); 41 C.F.R. § 102-3.75(k). And agencies *must* also conduct "broad outreach" to "interested parties and stakeholder groups likely to possess [the required balanced] points of view." 41 C.F.R. § 102-3.60(b)(3)(ii) (May 20, 2024 ed.).[1] Further, advisory committees requiring "technical expertise," in particular, "should include persons with demonstrated professional or personal qualifications and experience relevant to the functions and tasks to be performed by the committee." *Id.* § 102-3.60(b)(3)(i) (May 20, 2024 ed.); *see also, e.g.*, *id.* § 102-3.105(b) (May 20, 2024 ed.) (agency heads must "issue administrative guidelines and management controls" detailing how staff must operate the agency's federal advisory committees).

It is well established that "an administrative agency is required to adhere to its own internal operating procedures." *Church of Scientology of California v. United States*, 920 F.2d 1481, 1487 (9th Cir. 1990). And this is true even when an agency purports to "disclaim[] binding effect." *Ixchop-Perez v. Barr*, 821 F. App'x 690, 695 (9th Cir. 2020) (unpublished); *Appalachian Power Co. v. E.P.A.*, 208 F.3d 1015, 1023 (D.C. Cir. 2000) (agency's disclaimer that its policies do not "create any rights enforceable by any party" was "boilerplate" and without effect).

---

[1] Defendants acknowledge (at 7) "that a 'state and local health department perspective' should be considered when selecting voting members" and do not dispute that they failed to consider this perspective. *See* FAC ¶ 442.

Plaintiffs' injuries are also redressable regardless of procedural injury. "[A] plaintiff satisfies redressability when he shows that a favorable decision will relieve a discrete injury to himself, not that a favorable decision will relieve his every injury." *Day v. Henry*, 152 F.4th 961, 967 (9th Cir. 2025), *cert. denied*, 224 L. Ed. 2d 831 (May 18, 2026) (cleaned up). Vacating the unlawful ACIP appointments would, by itself, ensure that Secretary Kennedy's unlawful appointments cannot be seated and mitigate the need for States to further decouple their laws from CDC and ACIP, *see* FAC ¶ 394, which is a "potential gain[] [that is] undoubtedly sufficient to give [Plaintiffs] standing." *NAACP Legal Def.*, 496 F. Supp. 3d at 130.

Beyond that, the FAC "request[s] that the Court enjoin ACIP from taking further actions tainted by its unlawful composition" and "order Defendants to undertake good faith efforts to restore ACIP to a composition that is fairly balanced and not subject to inappropriate influence." FAC ¶¶ 467–68. Defendants do not dispute the availability of this relief, which would unquestionably redress some of Plaintiffs' injuries.

The Court previously suggested that Defendants' bypassing of "ACIP to implement the Kennedy Schedule underscore[s] the uncertain relationship between ACIP's recommendations and the defendants' decisions." Order at 5; Mot. at 10 (similar). But Defendants' ability to undertake different varieties of unlawful action does not negate Plaintiffs' standing to challenge each separate action. On the contrary, it confirms that Defendants cannot use an unlawfully constituted ACIP as an alternative to other unlawful avenues.

**Conclusion**

The Court should deny the motion to dismiss. Alternatively, if the Court grants the motion, it should confirm that Plaintiffs may continue to challenge the ACIP's reconstitution under 5 U.S.C. § 704 in connection with the hepatitis B claim.

November 12, 2026

Respectfully submitted,

**KRISTIN K. MAYES**
Attorney General for the State of Arizona

/s/ *Joshua D. Bendor*
Joshua D. Bendor*
*Solicitor General*
Clinten N. Garrett*
Syreeta A. Tyrell*
Alexa G. Salas*
*Assistant Attorneys General*
Office of the Arizona Attorney General
2005 N. Central Ave.
Phoenix, Arizona 85004
Joshua.Bendor@azag.gov
Clinten.Garrett@azag.gov
Syreeta.Tyrell@azag.gov
Alexa.Salas@azag.gov

*Attorneys for the State of Arizona*

**ROB BONTA**
Attorney General for the State of California

/s/ *Katherine Milton*
Katherine Milton
Deputy Attorney General
Neli Palma
Senior Assistant Attorney General
Kathleen Boergers
Nimrod P. Elias
Supervising Deputy Attorneys General
Marnie G. Ganotis
Deputy Attorney General
455 Golden Gate Avenue
San Francisco, CA 94102-7004
(415) 229-0118
katherine.milton@doj.ca.gov
Neli.Palma@doj.ca.gov
Kathleen.Boergers@doj.ca.gov
Nimrod.Elias@doj.ca.gov
Marnie.Ganotis@doj.ca.gov

*Counsel for the State of California*

**Additional Plaintiffs' Counsel**

**PHILIP J. WEISER**
Attorney General for the State of Colorado

/s/ *David Moskowitz*
David Moskowitz*
Deputy Solicitor General
Nora Passamaneck*
Senior Assistant Attorney General
Colorado Department of Law
1300 Broadway, #10
Denver, CO 80203
(720) 508-6000
david.moskowitz@coag.gov

**WILLIAM TONG**
Attorney General of Connecticut

/s/ *Shawn L. Rutchick*
Shawn L. Rutchick*
Assistant Attorney General
165 Capitol Ave
Hartford, CT 06106
(860) 808-5210
Shawn.Rutchick@ct.gov

*Attorneys for Plaintiff State of Connecticut*

*Attorneys for the State of Colorado*

**KATHLEEN JENNINGS**
Attorney General of the State of Delaware

/s/ *Vanessa L. Kassab*
Ian R. Liston*
Director of Impact Litigation
Vanessa L. Kassab*
Deputy Attorney General
Delaware Department of Justice
820 N. French Street
Wilmington, DE 19801
(302) 683-8899
vanessa.kassab@delaware.gov

*Attorneys for Plaintiff State of Delaware*

**AARON M. FREY**
Maine Attorney General

*/s/ Kendall R. Schutzer*
Kendall R. Schutzer*
Assistant Attorney General
Office of the Attorney General
6 State House Station
Augusta, ME 04333
Tel.: 207-626-8452
Fax: 207-287-3145
Kendall.Schutzer@Maine.gov

*Attorneys for Plaintiff State of Maine*

**ANTHONY G. BROWN**
Attorney General of Maryland

*/s/ Michael Drezner*
Michael Drezner*
Senior Assistant Attorney General
Office of the Attorney General
200 Saint Paul Place
Baltimore, Maryland 21202
(410) 576-6959
mdrezner@oag.state.gov

*Counsel for the State of Maryland*

**DANA NESSEL**
Attorney General of Michigan

*/s/ Neil Giovanatti*
Neil Giovanatti*
*Assistant Attorney General*
Michigan Department of Attorney General
525 W. Ottawa
Lansing, MI 48909
(517) 335-7603
GiovanattiN@michigan.gov

*Attorney for the State of Michigan*

**KEITH ELLISON**
Attorney General for the State of Minnesota

*/s/ Jennifer Moreau*
Jennifer Moreau*
Brian S. Carter**
Assistant Attorneys General
445 Minnesota Street, Suite 600
St. Paul, Minnesota, 55101
(651) 757-1195
jennifer.moreau@ag.state.mn.us

**JENNIFER DAVENPORT**
Attorney General of New Jersey

*/s/ Joshua P. Bohn*
Joshua P. Bohn*
Kevin Bui*
Amanda McElfresh*
*Deputy Attorneys General*
Office of the Attorney General
25 Market Street
Trenton, NJ 08625

brian.carter@ag.state.mn.us

*Attorneys for Plaintiff State of Minnesota*

(609) 696-5366
Joshua.Bohn@law.njoag.gov
Kevin.Bui@law.njoag.gov
Amanda.McElfresh@law.njoag.gov

*Counsel for the State of New Jersey*

**RAÚL TORREZ**
Attorney General for the State of New Mexico

*/s/ Ben Osborn*
Ben Osborn*
Senior Counsel
New Mexico Department of Justice
201 3rd St NW #300
Albuquerque, NM 87102
bosborn@nmjoj.gov

*Attorney for State of New Mexico*

**LETITIA JAMES**
Attorney General of New York

*/s/ Mark Ladov*
Mark Ladov*
*Special Counsel*
Rabia Muqaddam*
*Chief Counsel for Federal Initiatives*
Andres Ivan Navedo
*Assistant Attorney General*
28 Liberty St.
New York, NY 10005
(212) 416-8240
mark.ladov@ag.ny.gov
rabia.muqaddam@ag.ny.gov
ivan.navedo@ag.ny.gov

*Attorneys for the State of New York*

**DAN RAYFIELD**
Attorney General of Oregon

*/s/ Scott P. Kennedy*
Scott P. Kennedy*
Senior Assistant Attorney General
Oregon Department of Justice
100 SW Market Street
Portland, OR 97201
Tel (971) 673-1880
Fax (971) 673-5000
Scott.Kennedy@doj.oregon.gov

*Attorneys for Plaintiff State of Oregon*

**PETER F. NERONHA**
Attorney General of Rhode Island

*/s/ Kathryn T. Gradowski*
Kathryn T. Gradowski*
*Special Assistant Attorney General*
150 South Main Street
Providence, RI 02903
(401) 274-4400, Ext. 2810
kgradowski@riag.ri.gov
Rhode Island Bar No. 10871

*Counsel for the State of Rhode Island*

**JOSHUA L. KAUL**
Attorney General of Wisconsin

**CHARITY R. CLARK**
Attorney General for the State of

/s/ Amanda Quester
Amanda Quester*
Assistant Attorney General
Wisconsin Department of Justice
Post Office Box 7857
Madison, WI 53707-7857
(608) 266-8690
amanda.quester@wisdoj.gov

*Counsel for the State of Wisconsin*

Vermont

/s/ Ryan Patrick Kane
Ryan Patrick Kane*
Deputy Solicitor General
109 State Street
Montpelier, VT 05609
(802) 828-3171
Ryan.Kane@vermont.gov

**JOSH SHAPIRO**
*in his official capacity as Governor of the Commonwealth of Pennsylvania*

Jennifer Selber
*General Counsel*

/s/ Aimee D. Thomson
Aimee D. Thomson*
Deputy General Counsel
Pennsylvania Office of the Governor
30 N. 3rd St., Suite 200
Harrisburg, PA 17101
(223) 234-4986
aimeethomson@pa.gov

*Counsel for Governor Josh Shapiro*

**Admitted Pro Hac Vice*

**CERTIFICATE OF SERVICE**

I hereby certify that this document, filed through the CM/ECF system, will be sent via electronic mail to the registered participants as identified on the Notice of Electronic Filing.

November 12, 2026 *<u>/s/ Clinten N. Garrett</u>*